## ALABAMA & VICKSBURG RAILWAY CO. *v.* D. SPARKS.

1. SUPREME COURT. *New point. Objection as to value.*

   In an action against a carrier for injury to animals transported, an objection by defendant to a verdict, on the ground that the value at the place of shipment, as stipulated in the contract, was not shown, cannot be made for the first time in the supreme court.

2. RAILROADS. *Shipment of animals. Loading long before departure of train.*

   A railroad company, as a common carrier, is under duty to transact its business in a reasonable and ordinary manner. A course of business, by such carrier, under which a shipper is required to place horses in a car, there to remain for twelve hours before the departure of the train having a fixed schedule, is neither reasonable nor lawful.

3. SAME. *Delay. Contract limiting liability. Insufficient force.*

   In such case, the carrier is liable for injury to the horses in transit, caused by thus loading them in the car an unreasonable time before the departure of the train, although the contract expressly exempts it from liability for injury caused by mere delay, and although the defendant had no night switch-engine or crew to take the car out earlier for shipment after the loading.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

Appellee, Sparks, was the owner of a car-load of horses, shipped under a special contract from San Antonio, Texas, to Jackson, Miss. By the contract, he was given transportation free, and he had the care of the horses. One stipulation of the contract was that he released the carriers from liability on account of any delay in transporting the horses,

and another was that he would not hold them responsible for damage resulting from the animals being wild, unruly, weak or maiming each other, or because of heat and other results of being crowded. It was also stipulated that the actual cash value of the animals at the time and place of shipment was to be the measure of recovery in case any of the animals were killed.

This action was brought to recover of appellant damages for the death of one of the horses and injury to another, caused by alleged negligence in transportation. There was evidence to show that the horses arrived at Vicksburg, Miss., without injury, and that from Vicksburg to Jackson the run was only about three hours. On the evening of the day the horses arrived at Vicksburg, after being fed and watered, they were reloaded at about five o'clock in the afternoon, at which time plaintiff supposed they were to be carried directly on to Jackson. But, after the car had been taken from the stock-yard to a point about half a mile away, he was informed that the train would not leave Vicksburg until six o'clock the next morning. He protested against this, and asked that the car be taken back to the yard, in order that the horses might be unloaded, but was informed that the company had no night switch-engine or crew, and that, as the train left very early in the morning, unless he allowed the horses to remain in the car where they were, they could not be taken out at all. In other words, he was informed that, if the car was taken back and the horses unloaded, they would have to be brought out the next evening and wait over until six o'clock the following morning, at which time the first freight-train would leave. Ascertaining that this would be the case, he finally acquiesced. He testified that the animals, crowded in the car, standing still, were more likely to injure one another than when the car was in motion, and that, while the animals injured one another, the injury might not or would not have resulted if the car had been left unloaded over night and loaded early, in time to be carried

out by the first train. It was claimed that the real cause of the injury was leaving the animals standing all night at rest in a crowded car. The evidence further tended to show that the horses were fresh and sound when they were put in the car. On behalf of defendant, it was shown that the train and horses received no rough handling; that the horses were all right at 7:20 o'clock in the morning, but that, at a station a short distance out from Vicksburg, one horse was discovered down, when the conductor furnished plaintiff a plank to separate the horse that was down from the others, and the conductor offered to do all he could to assist plaintiff in taking care of the horses.

The court refused a peremptory instruction for defendant, and on behalf of plaintiff gave the following: "The court instructs for the plaintiff that, if they believe from the evidence that the injury to the animals was the result of the delay of the railroad at Vicksburg in their transportation, then they will find for the plaintiff such damages as it appears by the evidence he sustained on account of such delay."

Verdict and judgment for plaintiff. Motion for new trial overruled. Defendant appeals. The opinion contains a further statement of the case.

*Nugent & McWillie*, for appellant.

The proximate cause of the injury is readily attributed to the other animals in the car. The trial court charged the jury that it could find for the plaintiff, if it believed the injury was the result of the delay in transportation. That was a pure matter of fact, to be judged of by them as well without as with instructions. In *Railway Co.* v. *Bigger*, 66 Miss., 319, it was held that an injury inflicted upon the animal itself, without fault on the part of the carrier, or caused by other animals with which it was being transported in the same car, comes within the reason and spirit of the exception to the rule of common law liability. Animals transported in a manner contrary to their habits and instincts, may injure each

other, notwithstanding every reasonable precaution. For such occurrences the carrier is not answerable. *Railroad Co.* v. *Abels,* 60 Miss., 1017 ; *Railroad Co.* v. *Scruggs,* 69 *Ib.,* 418.

It was not actual negligence to leave the loaded car standing on the track over night. The company had no night switch-engine or crew. It was under no duty to provide, at an additional expense, an engine and crew to move the car back to the stock-yard, so that it could be unloaded, and repeat the same service the next morning before the train started. By the very terms of the contract, mere delay in transportation was not to be charged against the carrier. *Mitchell* v. *Railroad Co.,* 68 Ga., 644 ; 19 Am. Rep., 312 ; 107 U. S., 107 ; *Railroad Co.* v. *McCarland,* 11 Bradwell (Ill.), 491.

The defendant was only bound to provide means to meet the ordinary exigencies of it business. In no other way can railroads be operated. *Railroad Co.* v. *McDonough,* 21 Mich., 165 ; *Railroad Co.* v. *Haynes,* 63 Miss., 485.

The plaintiff assented to the arrangement, and did not insist that the car should be returned to the stock-yard.

The contract expressly stipulates that the value of the animals at the place of shipment was to be the measure of damages. *Hill* v. *Railroad Co.,* 28 Am. & Eng. R. R. Cas., 87 ; *Railroad Co.* v. *Weakley,* 35 *Ib.,* 635. Therefore the instruction given for plaintiff was objectionable. But it was obnoxious to another objection. Under it the defendant was to be held liable for damages sustained by plaintiff on account of the delay, if the injury to the animals was the result of the delay, or the consequence.

*Williamson & Potter,* for appellee.

1. The railroad company is required to have a force sufficient to transact its business. In this case it should have had the stock-yard at a more suitable and convenient place.

This is not an action for delay, but for injury sustained by

reason of the negligence of the defendant causing injury to the animals. *Railroad Co.* v. *Abels*, 60 Miss., 1017; *Johnson* v. *Railway Co.*, 69 *Ib.*, 191.

2. The proof of damages is sufficient. Even under the contract, the value at the place of shipment is shown. There is no conflict in the evidence. The verdict is fully supported, and the judgment should be affirmed.

COOPER, J., delivered the opinion of the court.

The objection that the proof of value of the animals for the injury of which this suit is brought, does not relate to their value at the point from which they were shipped, which value, under the contract, was to control in case of injury, should have been made in the court below. If this had been done, the plaintiff might, and probably would, have introduced other evidence; and, further, for any thing that appears in the record, it may be true that the plaintiff, in testifying, was, in fact, referring to the value of the animals at that place. The point cannot be made here for the first time. George's Miss. Dig., p. 375, §§ 68–86.

The instruction asked and secured by the plaintiff is not accurate, in view of the developed facts. The contract under which the horses were shipped expressly stipulates that the carrier shall not be liable for delay, and it does not appear that, in fact, there was unusual or unreasonable delay. It may be further said that it is evident from the whole facts that, in truth, no injury was sustained by reason of the mere delay, and that a verdict resting upon that assumption would find no support in the evidence. But, looking to the whole case as developed, we think it clear that the parties and the jury must have understood that the delay meant by the instruction was not the mere failure to transport the car from Vicksburg to Jackson on the day it was received at Vicksburg, but the requirement by the defendant that the plaintiff should load his horses in the evening, and permit the loaded car to be carried from the stock-yards to the train-yard, there

to be delayed to await the movement of the train the next morning. It was the course of business to which the plaintiff excepted, and from which he claimed the injury resulted, and not the mere fact that no train left Vicksburg until the following day. The plaintiff was willing to submit to the delay, and so informed the yard-master. What he objected to and protested against was the requirement that his stock should be put in the car in the evening, there to remain until six o'clock the next morning before the journey would, under the schedule of the defendant, be commenced. The plaintiff contended that this course of business was unreasonable, while the defendant insisted that it had the right so to arrange its trains in the evening because it had no night force, and it would not be convenient to make up the train in the morning. This was the real controversy, and the court rightly determined it in favor of the plaintiff. The defendant, being a common carrier, was under a duty to transact its business in a reasonable and ordinary manner, and a course of business by which one is required to place animals in a car, there to remain for twelve or thirteen hours before the departure of a train having a fixed schedule time, is neither reasonable nor lawful.

*The judgment is affirmed.*