## HOUTZ v. UNION PAC. R. CO.

No. 1765. Decided January 27, 1908 (93 Pac. 439).

1. CARRIERS—TRANSPORTATION OF PROPERTY—LIMITATION OF LIABILITY—NATURE OF RIGHT. Though common carriers are as a general rule liable as insurers of property, and are responsible for loss or damage, unless caused by the act of God or of the public enemy, this liability may be limited by a fair and reasonable contract as to any loss not caused by its negligence or misconduct, or that of its servants.

2. SAME—LIABILITIES SUBJECT TO LIMITATION—NEGLIGENCE OR MISCONDUCT. A carrier cannot by contract exempt itself from nor limit its liability for the loss of or damage to property caused by its negligence or misconduct or that of its servants.[1]

3. SAME—TRANSPORTATION OF LIVE STOCK. Provisions in a contract with a carrier that a shipper of sheep assumed all risk of damage from delay in transportation, or loss or damage from any other cause than willful or gross negligence, and other provisions exempting the carrier from or limiting its liability for loss or damage from failure to exercise a proper degree of care, contravene public policy and are void.

4. SAME. A contract provision that the rules, regulations, and conditions prescribed by a carrier of live stock, as evidenced by its published tariffs, classifications, and circulars, were binding on the shipper, and that his signature of the contract was conclusive evidence of his knowledge of and assent to the conditions thereof, is void.

5. APPEAL—REVIEW—FINDINGS—EFFECT. Findings by the court as to a carrier's delay and negligence in the transportation of sheep are binding on the carrier on appeal.

[1] Williams v. O. S. L. R. Co., 18 Utah 210, 54 Pac. 991, 72 Am. St. Rep. 777.

6. CARRIERS—TRANSPORTATION OF LIVE STOCK—LIMITATION OF LIA-
BILITY—VALIDITY. A stipulation with a carrier of live stock,
fairly entered into and reasonable under all the circumstances, re-
quiring the presentation of a claim for loss or damage, is not in-
effectual in all cases where the loss or damage results from neg-
ligence.

7. SAME. Where a contract for the shipment of sheep limits the
carrier's liability to loss from willful or gross negligence, a para-
graph requiring the presentation of a claim within ten days as a
condition of liability must be construed as referring only to claims
for willful or gross negligence.

8. SAME. A contract exempting carrier of sheep from liability ex-
cept for willful or gross negligence, and then only on presentation
of a claim, is void.

9. TRIAL—FINDINGS BY COURT—CONFORMITY TO PLEADING AND EVI-
DENCE. In an action for injuries to a shipment of sheep, a finding,
not based on any pleading or evidence, that a stipulation requiring
notice within ten days of claim for damage is reasonable, is a
mere conclusion of law, without effect.[2]

APPEAL from District Court, Second District; J. A. How-
ell, Judge.

Action by John S. Houtz against the Union Pacific Rail-
road Company. From a judgment in favor of defendant,
plaintiff appeals.

REVERSED AND REMANDED.

*Heywood & McCormick* for appellant.

*P. L. Williams, Geo. H. Smith*, and *Jno. G. Willis* for res-
pondent.

STRAUP, J.

This is an action to recover damages for an injury to live
stock, consisting of sheep, alleged to have been occasioned
through the negligence of the defendant, a common carrier,
in transporting the sheep from Soda Springs, Idaho, to Oma-
ha, Nebraska. The case was tried to the court, who, among
other things, found that the defendant, at Schuyler, Neb., neg-

---

[2] Dillon Imp. Co. v. Cleaveland, 32 Utah 1, 88 Pac. 670.

ligently delayed the carriage of the sheep, and there negligently held and confined them on its cars for a period of seventy-two hours, and at a place where the sheep could neither be unloaded, watered, nor fed; that during the time the sheep were there delayed the plaintiff frequently urged the defendant to transport and convey the sheep to a place where they could be unloaded, fed, and watered, and, although the defendant could well have done so, nevertheless it negligently failed and refused to do so; and that in consequence thereof the plaintiff was damaged in the sum of $1,326 by an excess shrinkage in weight of the sheep, and in the further sum of $954 because of a drop in the market occurring within the time of the negligent delay and detention. The court further found that the plaintiff and defendant entered into a written contract by the terms of which it was stipulated (quoting from findings); (1) That the carrier shall not be liable for the loss or damage of, nor for any injuries received by, any of said stock, unless the same is the direct result of willful misconduct or actual negligence of said carriers, their agents, servants, or employers. (2) That the shipper agreed to load and unload and reload all said stock at his own expense, and to feed, water, and attend to the same at his own risk, while it was in any stockyard. (3) That the shipper assumed all the risk of any of them being weak and maiming each other or themselves in consequence of cold or suffocation or any other defects, and the shipper agreed to assume all the risk of damage which may be sustained by reason of delay in transportation, or loss or damage for any other cause, or anything not resulting from the willful negligence of the defendant. (4) It is also specially agreed and provided that the defendant should not be liable for any loss or damage to said stock by causes beyond its control, or by floods or fire, shrinkage in weight, changes in weather, heat or cold, or any other thing or cause not directly the result of gross negligence on the part of said defendant, its agents, or servants. (5) Said contract further provided that unless claims for loss or damage or detention are presen-

ted within 10 days from the date of unloading said stock at destination, and before said stock has been mingled with the other stock, such claims shall be deemed to be waived, and the defendant under said contract was discharged from all liability thereby. (6) It was still further provided in said contract that the rules, regulations, and conditions pre-scribed by the defendant for the transportation of live stock, as evidenced by their published tariffs, classifications, and circulars in force and effect at said time, were binding upon said plaintiff, and that the signing of the contract by the shipper, or his agent, was and should be conclusive evidence of the knowledge, assent, and agreement to each and every stipulation and condition thereof by said shipper, the plain-tiff." It was further found that no claim was presented to the defendant within ten days, nor before the mingling of the sheep with other sheep, and not until twenty-four days after the sheep reached their destination, and that the "pro-vision requring the claim to be presented within 10 days after the unloading of the sheep and before the sheep had been commingled with other sheep is a reasonable provision under the circumstances." Judgment was rendered for the de-fendant on the sole ground that the claim was not presen-ted "within ten days after the arrival of the sheep at their destination and before having been mingled with other sheep." The plaintiff appeals.

The only question presented by the appeal is with respect to the validity and effect of the contract. As a general rule common carriers are held liable as insurers of property in-trusted to them, and are held responsible for any loss of or damage to the property, unless occasioned by the act of God or by the public enemy. The law is, however, well settled in this country that the carrier's liability as an insurer may be limited by special contract, when fairly entered into and reasonable in its terms, and that it may limit its common-law liability for any loss, provided such loss is not the re-sult of its negligence or misconduct, or that of its servants. The rule is equally well settled that the carrier cannot make a valid contract by which it is to be exempt from liability for

any loss or damage resulting from its misconduct or negligence, or that of its servants; nor can its liability for a failure to exercise a proper degree of care in the transportation of property intrusted to it be limited by special contract. (*Williams* v. *O. S. L. R. Co.*, 18 Utah 210, 54 Pac. 991, 72 Am. St. Rep. 777; 5 Am. & Eng. Ency. Law, 288-308, and cases there cited.) These principles, of course, are not disputed. The contention made by respondent is that the stipulation requiring the presentation of a claim as a condition precedent of liability is not violative of these principles. The action was grounded on defendant's negligence. The court found plaintiff's loss and damage to be the result of such negligence. That the provisions of the contract whereby it was stipulated that the plaintiff assumed all risk of damage which might be sustained by reason of delay in transportation, or loss or damage for any other cause or thing not resulting from the willful or gross negligence of the defendant, and all other provisions exempting the defendant from or limiting its liability for loss or damage resulting from its failure to exercise a proper degree of care, contravene public policy, and are void, is not seriously disputed.

For the same and other reasons not necessary to here state, it may be said that paragraph 6 of the contract is also invalid.

At a former hearing of this case we rendered an opinion, which was filed, but not published, wherein it was in effect held by us that the stipulation in the contract requiring the presentation of a claim as a condition precedent of liability for loss or damage should only apply to and be given effect in case of a loss or damage not occasioned by the defendant's negligence or misconduct; and, as the court found plaintiff's damage to be the result of defendant's negligence, the stipulation was held to be inoperative. We reached this conclusion upon the theory that, when an injury has been sustained by the negligence of the carrier, a complete cause of action arose upon the infliction of the injury; that to permit the carrier by special contract to make an additional requirement, such as the presentation of a claim as a condition precedent of lia-

bility, and before a right of action existed, restricted or limited the right which the shipper would have to maintain an action for such negligence, and to that extent limited or conditioned the carrier's liability for negligence; that, if it was against public policy to permit a carrier in advance to contract against its negligence, then it followed that it could not by special contract in advance impose conditions precedent of liability for a loss or damage occasioned by its negligence; that, if such a condition as here could be lawfully imposed, then other conditions could also be imposed, if fairly entered into, and if found to be reasonable under the circumstances of the case; and hence the stipulation, when applied to a loss or damage occasioned by the negligence of the carrier, was against the policy of the law and ineffectual. These views seem to be supported by the following authorities: 6 Cyc. 505; *Mo. Pac. Ry. Co. v. Harris,* 67 Tex. 166, 2 S. W. 574; *Ormsby v. U. P. R. Co.* (C. C.), 4 Fed. 706; *Smitha v. L. & N. R. R. Co.,* 86 Tenn. 198, 6 S. W. 209; *So. Express Co. v. Crook,* 44 Ala. 468, 4 Am. Rep. 140; *So. Exp. Co. v. Bank of Tupelo,* 108 Ala. 517, 18 South. 664; *Baltimore & Oh. Exp. Co. v. Cooper,* 66 Miss. 558, 6 South. 327, 14 Am. St. Rep. 586; *Sandford v. Housatonic R. R. Co.,* 11 Cush. (Mass.) 155; *Adams Exp. Co. v. Reagan,* 29 Ind. 21, 92 Am. Dec. 332; *G., C. & S. F. Ry. Co. v. York & Johnson,* 2 Willson, Civ. Cas. Ct. App. sec. 813. The rule in 6 Cyc. 505, *supra,* is stated as follows:

"It is usual to insert in bills of lading, or other contracts for shipment, a stipulation that written notice of a claim for loss of or damage to the goods shall be given to the agents of the carrier within some specified time, such as thirty or ninety days, and that unless such notice is given there will be no liability on the part of the carrier, and such stipulations are generally upheld so far as they are found to be reasonable. Cases holding such stipulations to be invalid are usually based on the ground that the terms thereof are unreasonable, rather than on the general invalidity of such conditions. But they are regarded as limitations of the carrier's liability, and therefore as ineffectual against a claim for loss or injury due to the carrier's negligence, and also as invalid where limitation of common-law liability is prohibited by statute."

Cases are cited from several states in support of the text. In the case of *Rathbone* v. *Railway Co.*, 140 N. Y. 48, 35 N. E. 418, the court says:

"It is well settled that these stipulations in the contract will not be construed to relieve the carrier from liability for his own negligent acts. His duty and obligation to exercise a proper degree of care of the property while in his custody is not affected by them. Full and sufficient scope is given to their operation when it is held that they exempt the carrier from his common-law responsibility as an insurer of the property."

After our opinion was rendered, a petition for rehearing was filed. Upon further reflection we became somewhat doubtful of our position in this regard. A rehearing was therefore granted, and the case has again been argued and resubmitted. That the courts greatly divide on this question there can be no doubt. It may also be conceded that the greater number of cases hold, and many textwriters seemingly declare the law to be contrary to the views expressed by us. Among them may be cited the following: 4 Elliott on Railroads, sec. 1512; 1 Hutchinson on Carriers, sec. 442; Moore on Carriers, 333; 5 Am. & Eng. Ency. Law, 321. Many cases are cited by these text-writers. It was not necessary to set them forth here. The rule declared in 1 Hutchinson on Carriers, sec. 442, is as follows:

"It is frequently the custom for the carrier to insert in the contract of shipment a condition that, in the event of loss, the owner shall give notice of his claim within a specified time. Such conditions are usually to the effect that the notice shall be in writing and presented to some officer or agent of the carrier, either before the goods are removed from the point of destination, or within a certain time thereafter, or within a designated time after the loss has occurred; and when such conditions are reasonable the owner will be precluded from the right to maintain an action against the carrier, unless he has presented the notice within the time stated and in the manner provided."

Whether the author in the above quotation is dealing with a "loss" for which the carrier is liable as an insurer, or with a loss or damage occasioned from any cause for which the carrier is liable, including his misconduct and negligence, is

not clear. The same is true of the statement in 4 Elliott, sec. 1512, where it is said:

"A valid contract may be made requiring claims for loss or damage to freight to be presented in a certain manner or within a certain time, provided it is reasonable."

In Moore on Carriers, at page 333, it is said:

"The carrier may lawfully, by contract with the shipper made by clause or stipulation in the bill of lading or shipping receipt or otherwise, provide a reasonable time within which the shipper shall present his claim or give notice of claim for loss or damage, and the manner of giving such notice or presenting his claim, and limit its liability to cases in which the claim shall be presented or notice given in accordance with the terms of the contract."

But on page 336 the following statement is made by the same author:

"Most of the authorities sustain such stipulations, even where the loss is one caused by the defendant company's negligence. In Texas such a stipulation is held to be a limitation of the common-law liability of the carrier, and of no effect where the loss is one resulting from the carrier's negligence."

While some of the cases cited in support of these texts pertain to claims of loss or damage for which the carrier was sought to be held liable as an insurer, yet others pertain to claims of loss or damage occasioned by the negligence of the carrier. Among the latter may be cited: *Goggin* v. *Kan. Pac. Ry. Co.,* 12 Kan. 416; *Sprague* v. *Mo. Pac. Ry. Co.,* 34 Kan. 347, 8 Pac. 465; *W. & W. Ry. Co.* v. *Koch,* 47 Kan. 753, 28 Pac. 1013; *The St. Hubert,* 107 Fed. 727, 46 C. C. A. 603; *The Westminster,* 127 Fed. 680, 62 C. C. A. 406; *So. Ry. Co.* v. *Adams,* 115 Ga. 705, 42 S. E. 35; *Dawson* v. *Railway Co.,* 76 Mo. 514; *Hatch* v. *Minneapolis, etc., Ry. Co.* (N. D..), 107 N. W. 1087. The above are not all the cases that are cited on this point; but these sufficiently show that in a number of cases the requirement of notice or the presentation of a claim was held to apply to a loss or damage occasioned by the carrier's negligence, and by reason of their citation in support of the foregoing texts it may fairly be in-

ferred that the text-writers intended the rule declared by them to apply to cases of loss or damage resulting from negligence or misconduct, as well as from other causes.

The cases cited from Illinois, Wisconsin, and New York are not in point, for the reason the rule obtained in those jurisdictions that it was not against the policy of the law to contract against ordinary negligence. All the courts giving effect to such stipulations, when applied to a loss or damage by negligence, in most positive terms assert that it is against public policy to permit a common carrier by special contract to relieve itself from, or limit its liability for, a loss or damage incurred by its negligence or misconduct; but it is asserted that the giving effect to such a stipulation in such a case is not violative of this principle. Some courts have given reasons for such a conclusion. Others merely discuss the question as to whether the stipulation was reasonable under all the facts and circumstances of the case, and, when found to be so, merely assert that it was not against the policy of the law. In some cases the conclusion is supported by the citation of cases where the stiplation was given effect in case of loss for which the carrier was sought to be held liable as an insurer. We well can understand why a stipulation, when reasonably and fairly entered into, requiring notice of claim of loss as a condition precedent to charge the carrier with liability as an insurer, does not contravene the policy of the law under consideration; for it is readily perceived that a loss or damage may occur by accident, dangers of carriage or navigation, and from other causes for which the carrier, at common law, is liable, but against which human skill and vigilance could ordinarily not have guarded. The principle is well illustrated in the case of *So. Pac. Exp. Co.* v. *Caldwell,* 21 Wall. (U. S.) 264, 22 L. Ed. 556. Many such losses will and do occur of which the carrier has no knowledge until notified, and unless a notice is given within a reasonable time no opportunity of investigating and ascertaining the facts is afforded it. A stipulation, therefore, that the carrier shall be relieved from the rigid and severe rules of the common law, which hold it liable as an insurer, unless notice of claim

of loss shall be given in order that it may protect itself against imposition and fraudulent claims, is no longer regarded as contravening the policy of the law. When the carrier is charged with liability as an insurer, the question of negligence is ordinarily not involved. While the plaintiff in such a case must aver and show a breach of duty, he is not required to aver and prove negligence on the part of the carrier. When the carrier and shipper contract with respect to the former's liability as an insurer, they are not contracting with respect to a liability for the carrier's tort or negligence; and, as remarked by Mr. Justice Strong in the Caldwell Case:

"The contract is not a stipulation for exemption from responsibility for the defendant's negligence, or for that of their servants. It is freely conceded that, had it been such, it would have been against the policy of the law and inoperative. A common carrier is always responsible for his negligence, no matter what his stipulations may be."

The reasons so well stated by that court why the stipulation was not against the policy of the law, when applied to a case of liability as an insurer, and where the question of negligence was not involved, are now given by many courts in cases of damage or injury to property by negligence, as is well illustrated in the case of *Sprague* v. *U. P. Ry. Co., supra.* In that case the action was brought against the carrier for negligence in the management of its cars, by reason of which the plaintiff's horses, which were being shipped, were thrown down, bruised, and injured, so that one of them died and the others were disabled. The reason given why the stipulation in the contract of shipment requiring notice of claim as a condition precedent of liability was not against the policy of the law was that it tended

"To protect the company from fraud and imposition in the adjustment and payment of claims for damages by giving the company a reasonable opportunity to ascertain the nature of the damage and its cause."

As we have attempted to show, in a case where the carrier is sought to be held liable as an insurer, there is much reason requiring notice of claim; for, in many instances, the carrier otherwise would not have knowledge of the loss. Even in

such case, where it was shown that the carrier had full knowledge of the loss, the failure to give the notice did not defeat the action. When, however, the carrier, through its negligence, inflicts an injury or damage upon property intrusted to it, the reason for the rule no longer exists. The carrier certainly is bound to take notice of its own acts of negligence and of the consequences of such acts. The servants of the carrier undoubtedly are required to be attentive and vigilant in the handling of and looking after property intrusted to their master's care. If, through their negligence, stock under their immediate charge is killed or injured, they, better than any one else, ought to have knowledge of such fact. The carrier has, equally with the shipper, and in many instances much better, opportunity to ascertain the facts and results of its negligence and the extent and nature of the injury or damage inflicted by it. We need but to look at the case in hand to show the inapplicability of such a reason. Here the court found that the carriage of the stock was negligently delayed, and at a place where it could not be unloaded, fed, or watered; that the plaintiff at the time frequently urged the defendant to move the stock to a place where it could have been fed and watered, and, although the defendant well could have done so, nevertheless it refused; and that plaintiff's injury and damage was the direct result of such negligence. That the servants of the defendant in charge of the train, and other agents of the defendant connected with the movement and operation of the train, knew of the delay, goes without saying. That stock requires feeding and watering, and that shrinkage in weight is likely to occur if not done, must have been equally well known to them, especially when the plaintiff frequently complained at the time and urged that the sheep be taken to a place where they could be taken care of. The evidence on the part of the plaintiff shows that the delay was unnecessary, his complaints and requests wholly disregarded, and the defendant's refusal to take the sheep to a place where they could have been watered and fed inexcusable. The court in effect so found. Such finding, on this record, is binding on the de-

fendant. To say that it was not bound to take notice of the consequences of such negligent acts, and was not required to exercise any vigilance in that regard until the shipper arrived with a prepared list of injuries, is but to say that it is not bound to discharge the duties and trust with that degree of care and fidelity imposed upon it by law. Such a holding tends to relax the motives for the exercise of such care.

Why was not the defendant, equally with the plaintiff, accorded every opportunity, before the sheep were unloaded at destination and before they left the stockyards, to investigate the results of its negligence and ascertain the nature and extent of the injury inflicted in consequence of such acts? Upon what principle should the carrier, in such case, be excused from exercising any vigilance in such regard until notified by the shipper, and be discharged from all liability if such notice is not given. The facts concerning plaintiff's damages alleged to have been occasioned by a change in the market could as readily have been ascertained twenty-four days as ten days after the arrival of the sheep at destination. We cannot well see why the presentation of a claim of such a loss was necessary in order that the defendant might properly protect itself against fraud and imposition, unless it shall be said that in all cases of tort the wrongdoer shall be timely notified of the mischief done by him, in order that he may, while the transaction is fresh, the better investigate the extent of it. But it is said the servants in charge had no means of determining the extent of shrinkage, for such facts could only be determined by a comparison of the weight of the sheep when delivered to the defendant and when they arrived at destination. It is quite true that the extent of such an alleged damage is largely determined from a consideration of such facts; but, in order that the defendant may protect itself from unjust claims, it is not essential that knowledge of all the facts should be possessed by some particular servant or servants in its employ. The facts concerning its alleged negligence of delay were as easily ascertained twenty-four days as ten days after its commission. So was the condition of plaintiffs sheep when delivered to it. Whoever

was possessed of knowledge of such fact knew it twenty-four days as well as ten days after the sheep arrived at destination. Whatever was known by such persons, and whatever evidence was possessed by them of such fact, could have been ascertained by the defendant at one time as well as another, at least until the matter became stale. The record of this case discloses that the sheep on their arrival were weighed at the stockyards, and the average weight of the different kinds of sheep ascertained. The record does not directly disclose the fact, but from the evidence in the case we think it a fair inference that there was kept a stockyard record of such weight. But, whether there was or not, the fact that the sheep were there weighed and the result thereof was as readily ascertained twenty-four as ten days thereafter. Such facts, in the very nature of things, were not peculiarly within the knowledge of the plaintiff. They were equally well known to the persons about the stockyards who attended the weighing and the person or persons to whom the sheep were sold. The contention made that the giving of notice within ten days was essential to enable the defendant to investigate and ascertain the facts, so it might properly have protected itself against an unjust claim, is more plausible than sound. No good reason appears why the defendant, with full knowledge of its negligent acts occasioning the delay, and with knowledge that the natural and probable consequences of such acts would result to plaintiff's damage, was not, equally with the plaintiff, afforded every opportunity to investigate and ascertain the nature and extent of the injury after the sheep arrived at destination and before they left the stockyards.

A further argument made in this connection is that, owing to the vast amount of business conducted by common carriers, and to the impractibility of immediate supervision over their numerous employees, and to the limited knowledge of the servants as to the nature and extent of injuries, such as here, it is but just that notice of claim should be given before rendering the carrier liable. This position is likewise untenable. It involves the violation of the well-recog-

nized doctrine of *"respondeat superior."* If it shall be once said that the master shall not be liable, or held responsible, for the negligence or misconduct of his servants in the discharge of his business and within the scope of their employment, unless notified within a reasonable time, then are not only the fundamental principles upon which the law of common carriers is founded disregarded, but also one of the essential principles of the law of negligence relaxed? Another reason given by courts is expressed in the case of *The Westminster,* supra, where it is said:

"The notice stipulated for is not of the fact of damage, more or less, but of the intent to hold the carrier liable for it, which, on failure to give notice, the latter, in view of the stipulation, may well regard as being waived."

With due regard to the very high standing of that court, we submit that the giving of such a reason begs the question; for it assumes the validity of the contract, the very thing to be demonstrated. Undoubtedly, if the carrier may assume such validity, then it may well act upon the assumption that unless notice is given all claim for damages is waived. If the stipulation is invalid, then upon what theory may it be said that the carrier may regulate its conduct upon it? Another reason given is stated in *Kalina* v. *U. P. R. R. Co.,* 69 Kan. 172, 76 Pac. 438, as follows:

"The clause in question is not one exempting the carrier from its common-law liability, or limiting that liability, but one imposing a condition upon the shipper, which he must observe before he may recover for a breach of the carrier's duty. In other words, it is a condition of recovery, and not an exemption from liability."

Such statements tend rather to confuse the proposition than to solve it. They consist of the making of one statement and denying it by asserting another, or the proving of a negative by an affirmative statement of its opposite. That there is a well-recognized distinction between a substantive right or liability, and remedy, though at times difficult of exact definition, is admitted. The assertion that the liability is not exempted nor limited, but the right of recovery is only con-

ditioned, is not the making of such distinction; nor is the stipulation remedial, and not substantive, if such was intended to be declared. To say that a liability exists unrestricted, but that the remedial right shall be asserted within a prescribed time or under a certain procedure, is one thing. To say that a liability exists, but that no right of action or recovery shall exist until something else is done, is quite another and different thing. The one pertains merely to remedy; the other, to the cause of action itself. If a carrier's contract should expressly provide a liability, to the fullest extent imposed by law for all torts committed by it, but should further provide that no recovery should be had for such wrongs, there would not be much difficulty in holding such a contract invalid, notwithstanding the argument that might be made that the contract did not affect liability, but only the right of recovery. The natural effect of such a contract would be to destroy or impair the substantive right or liability itself. When it is said that the liability for negligence is not exempted, nor limited, but that there should be no right of recovery with respect to it, there is a substantial denial of the one statement by the making of another. When, also, it is said such liability is not limited, but the right of recovery with respect to it is made to depend upon some condition precedent, it is, in degree, doing the same thing. If there is no right of vindication, or restoration, or recovery for a liability, except upon some condition precedent, it naturally follows that the liability is to that extent limited or conditioned. The condition goes, not to the remedy merely, but to the cause of action itself. Until performance of the condition, no cause or right of action exists; and such is the obvious meaning of the plain terms of the stipulation under consideration. We now come to the reasons given by other courts, and which are stated in Moore's work on Carriers (page 334), as follows:

"They do not relieve carriers from any part of their obligation as common carriers. As such they are bound to the same diligence, fidelity, and care as they would be required to exercise if no such stipulation had been made."

We find these expressions first used by Mr. Justice Strong in the *Caldwell Case,* where, as we have shown, they were used with respect to a stipulation pertaining to a loss or damage not alleged to have been caused by negligence, but where the carrier was sought to be held liable as an insurer. The expressions were made because the loss and damage sought to be recovered had not been incurred by the negligence of the carrier, and because the stipulation did not pertain to such a loss. We do not think Mr. Justice Strong intended that the language used by him should apply to a case of damage or injury incurred by the negligence of the carrier. He had no such case before him. But let us see whether such language can properly be applied to a case of negligence by the carrier. Why is it against the policy of the law to allow the carrier, by special contract, to exempt itself from, or limit its liability for, negligence? It is because of the fiduciary relation between the carrier and the shipper, the inequality of their positions, and the duties owing by the carrier to the public. To permit it to make such a contract tends to make it less careful and prompt in the performance of its duties and obligations, and less faithful in the discharge of its trust. Hence the policy of the law forbids such a contract. Now, is it true that a stipulation providing that the carrier shall not be liable for its negligence, whether ordinary, willful, or gross, except upon the presentation of a claim within a specified time, has no bearing or influence upon the exercise of its care and the discharge of its trust? The question is well answered by the statement that, the more stringent the motives are for the exercise of care and diligence, the greater is the probability that the proper degree of care and diligence will be exercised; the less stringent the motives are, the less likelihood that such care will be exercised. It is readily perceived, in many instances, the motive for the exercise of a proper degree of care

is not the same when the right of recovery is dependent upon some condition as when it is made absolute upon the infliction of the injury. The more conditions precedent of recovery which are imposed, the more difficult it is made on the part of the shipper to vindicate his right, and to recover for a loss or damage sustained by him. The more difficult it is made to vindicate the right, the less probable it is that it will be vindicated. Such matters have a natural tendency to influence the carrier in part to graduate its conduct, and to relax the degree of care and fidelity imposed upon it.

From the persual of the cases we find no satisfactory reason for the conclusion that the stipulation in question does not affect the liability, nor influence the conduct of the carrier in the discharge of its duties, and is, therefore, not against the policy of the law. We are, however, mindful that the views expressed by us are against the great weight of modern authority. We find ourselves in the position where the conclusion reached by us upon what we believe to be fundamental principles is contrary to the conclusion reached by many able courts upon a consideration of the same principles. When we find such to be the case, we confess the confidence in our original position on this point is somewhat shaken. We have therefore come to the conclusion not to rule the case upon the principle so broadly declared in our original opinion. Our holding in this regard is that a stipulation, when fairly entered into and found to be reasonable under all the circumstances, requiring the presentation of a claim for loss or damage, is not in all cases against the policy of the law, and for that reason ineffectual, merely because the claim pertains to a loss or damage occasioned by negligence. It is not necessary to consider the question when such a stipulation will be regarded reasonable and applicable, nor the circumstances under which the shipper is relieved from the giving of notice or presentation of such a claim, because of the further view entertained by us as to the invalidity of the contract before us. As we have seen, under the general doctrine of this country, a contract which exempts the carrier from, or limits its liability for, negligence, contravenes public policy. When the contract

in question is considered as a whole, is it not such a contract? Considering it in its entirety, what was the ruling intention of the parties, as evidenced by the plain language of its terms? Is it with respect to the presentation of a claim for damage or loss of all kinds? Or is it with respect to an exemption from, or limitation of liability for, negligence? The alleged damages were found to have resulted from a negligent delay in transportation. In paragraphs 3 and 4 of the contract it is stipulated in most positive terms that the defendant should not be liable for any loss or damage which might be sustained from delay in transportation or shrinkage or for any other thing or cause not resulting from the defendant's willful or gross negligence. That such and all other stipulations in the contract exempting the defendant from liability for loss or damage, except for gross or willful negligence, are against the policy of the law, requires no discussion. Paragraph 5 relates to the question of presentation of claims for loss or damage or detention, not of all kinds for which the defendant in law would be liable, but for a liability of a loss or damage or detention stipulated about in the preceding paragraphs. We think the only fair meaning of the contract, and the ruling intention of the parties, as declared by its plain terms, are that the defendant should not, in any event, be liable for negligence or misconduct not amounting to gross or willful negligence, and that it should only be liable for gross or willful negligence upon the presentation of a claim. Paragraph 5 cannot be regarded as a separate and independent stipulation wholly unaffected by the obnoxious stipulations preceding it, and treated as merely dealing with the question of the presentation of claims for loss or damage of all kinds and for which the defendant, under the law, would be liable. It is directly related to and affected by the preceding paragraphs. Each is a part and parcel of a contract exempting the defendant from liability for ordinary negligence, and making it liable only for gross or willful negligence upon the presentation of a claim.

After the parties had in unmistakable terms stipulated that there should be no liability for negligence, except for gross or

wilful negligence, how can it be said that by paragraph 5 they intended to stipulate that there should be a liability for ordinary negligence and for all losses and damages for which the defendant in law is responsible, provided a claim is presented? If such were the intention of the parties, then the words employed by them in paragraphs 3 and 4 were entirely useless. The giving of such a meaning to paragraph 5 is antagonistic to every other provision of the contract. The meaning which we have given it is in harmony with all other provisions of the contract. If the carrier and shipper intend not to contract for an exemption from or a restriction of the former's liability for negligence or misconduct, but merely intend to restrict the latter's remedy by the imposing of a reasonable condition, it ought not to be a difficult matter to express such an intention in language which is certain and which fairly conveys such a meaning. The contract under consideration is not susceptible of such a construction. When the proposition is reduced to its simplest form, it presents the question: Is a contract which exempts a common carrier from liability for ordinary negligence, and which renders it liable alone for gross or willful negligence, and that only upon the presentation of a claim, forbidden by the policy of the law? We think it is, and so hold.

Upon this record such holding controls the case, and necessarily requires a reversal of the judgment. But these further observations might also be noted: Though the stipulation in paragraph 5 were to be regarded valid, can it be held applicable to the loss or damage sustained by plaintiff because of a change in the market? The cases seem to hold that stipulations similar in language as is the one here, requiring the presentation of a claim as a condition precedent of the carriers liability, cannot be extended to a loss or damage occasioned by a fall of the market. The reasons for such a conclusion are that "agreements of this character are viewed with some strictness by the law, and unless the exemption from liability is clearly expressed it should not be allowed." (*Railway Co. v. Poole*, 73 Kan. 466, 87 Pac. 465), and that such a loss was·

33 Utah—13

not fairly contemplated by the parties and was not reasonably included within the terms of the stipulation. (*Mo., K. & T. Ry. Co. v. Fry,* 74 Kan. 546, 87 Pac. 754; *Cornelius v. Atchison, etc., Ry. Co.,* 74 Kan. 599, 87 Pac. 751; *Atchison, etc., Ry. Co. v. Poole,* 73 Kan. 466, 87 Pac. 465; *Leonard v. C. & A. Ry. Co.,* 54 Mo. App. 293; *Kramer & Co. v. C., M. & St. P. Ry. Co.,* 101 Iowa, 178, 70 N. W. 119; 5 Am. & Eng. Ency. Law, 324.)

The weight of authority also seems to be that, in an action where there is a plea of a special contract in defense limiting or conditioning the carrier's liability, the burden is upon the carrier, not only to show a valid special contract, but also to allege and prove facts and circumstances showing the stipulation to be reasonable. (*Ft. W. & D. C. Ry. Co. v. Greathouse,* 82 Tex. 104, 17 S. W. 834; *Kan. & Ark. Valley R. Co. v. Ayers,* 63 Ark. 331, 38 S. W. 515; *Cox v. Cent. Vt. R. R.,* 170 Mass. 129, 49 N. E. 97; *Brooks & Sons v. West. U. Tel. Co.,* 26 Utah 147, 72 Pac. 499; *Westcott v. Fargo,* 61 N. Y. 542, 19 Am. Rep. 300; 6 Cyc. 507-519, and cases; 5 Am. & Eng. Ency. Law, 324-326, and cases; notes to cases, 10 A. & E. R. R. C. (N. S.) 864; notes to cases, 13 L. R. A. 518.) In the case of *Railway Co. v. Greathouse,* supra, it was said:

"Without determining whether this provision in a contract such as this can in any case be enforced, we do not think the appellant has brought itself within the rules laid down in those cases that permit such contracts to be enforced and that recognize their legality. When such provisions of a carriers' contract are enforced, it is upon the assumption that such agreement is reasonable, when considered in the light of the subject-matter of the contract and the circumstances and surroundings of the parties. To prove that such conditions in a contract are reasonable is a burden resting upon the carrier, who must show by proper pleadings and evidence the existence of facts that call for an enforcement of the condition. There were no pleadings and proof whatever upon this question coming from the carrier. (*Railway v. Fagan,* 72 Tex. 132, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; *Railway v. Harris,* 67 Tex. 167, 2 S. W. 574.)"

And in *Galveston, H. & S. A. Ry. Co. v. Williams* (Tex. Civ. App.) 25 S. W. 1019, it was observed: "It is the answer that must allege such facts as will show that the contract was reasonable in its character."

The answer here contained no allegations, nor was there any proof upon the question, of the reasonableness of the stipulation. While the court found that the provision requiring the claim to be presented within ten days after the unloading of the sheep and before they had been mingled with other sheep was a reasonable provision, yet such a finding was a mere conclusion of law, without even evidence in support of it. Conclusions of law cannot be made to perform the office of findings. (*Dillon Imp. Co. v. Cleaveland,* 32 Utah 1, 88 Pac. 670.) The question of reasonableness of such a stipulation is generally one of fact, and is dependent upon the particular facts and circumstances of the case. No facts are alleged, proven, or found from which the reasonableness of the stipulation may be deduced. The finding must be treated as no finding on the subject. The burden being cast upon the defendant to show the reasonableness of the special provision, until such fact is found in defendant's favor, the special contract though otherwise valid and applicable, cannot avail it. The reasonableness of the provision cannot be determined from the face of the contract. It was well said by the Supreme Court of the state of Illinois:

"We think no court could intelligently hold that such a provision [the giving of notice at destination to the station agent or some officer of the carrier before the stock is removed from the place of delivery and mingling with other stock] is in and of itself reasonable and valid, regardless of the facts and circumstances surrounding the parties to the contract." (*Baxter v. Louisville R. Co.,* 165 Ill. 78, 45 N. E. 1003.)

The provision in that case was held unreasonable and invalid, because of the inference from the evidence that the carrier did not have a station agent or officer at the place of destination. To the same effect are *Engesether v. Gt. N. Ry. Co.,* 65 Minn. 168, 68 N. W. 4; *Carpenter v. Eastern Ry. Co.,* 67 Minn. 188, 69 N. W. 720.

So, too, it has been held that stipulations requiring the presentation of claims at a particular place and within a specified time are not applicable to cases where the nature of the injury or extent of loss cannot be reasonably ascertained within such

time; nor to damages for delay in transportation; nor where the communicated facts with respect to the loss or injury are as well or better understood by the carrier than the shipper. (6 Cyc. 508, 521, and cases; *Popham v. Barnard,* 77 Mo. App. 619; *Smitha v. Louisville, etc., R. Co.,* 86 Tenn. 198, 6 S. W. 209.) Such provisions have likewise been held unreasonable "if there is indefiniteness and uncertainty as to the agent to whom notice is to be given, or an agent is named to whom it would be impracticable to give notice, or if there is no agent reasonably accessible." (6 Cyc. 506, and cases cited.)

These cases but illustrate the rule that what may be a reasonable requirement with respect to the presentation of a claim in one case may be unreasonable in another. There being no allegations nor proof of the reasonableness of the stipulation, the court, on that ground, erred in giving it effect.

For the foregoing reasons, the judgment of the court below is reversed, and the cause remanded for a new trial. Costs to appellant.

McCARTY, C. J., and FRICK, J., concur.