COVINGTON *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY.

[71 South. 821.]

1. CARRIERS. *Carriage of live stock. Instructions. Contract against liabity for negligence. Choice by shipper. Limitation of value.*

In a suit for damages to a shipment of stock, where the animals were kept in a car with an open top door on the top for some forty hours in winter without feed, water, or rest, with snow and sleet coming through on them, an instruction that the jury could not consider any damages or injuries caused by the condition of the car was erroneous as calculated to lead the jury away from the main issue of the case since though the bill of lading read that the car had been accepted by the shipper as in proper condition, it still might have been possible for the road to make prompt shipment in the defective car without damage, and even had the shipper been bound by the selection of the car and the provisions of the bill of lading he had the right to expect prompt shipment.

2. CARRIAGE OF LIVE STOCK. *Contracts against liability for negligence.*

A provision in a bill of lading for a shipment of live stock that the car or cars in which the animals were loaded had been accepted by the shipper as being in proper condition, and that the road should not be liable except for loss resulting from its gross negligence, was void as an indirect attempt on the part of the road to contract against liability for its own negligence, since the carrier owes to the shipping public the duty of providing reasonably safe appliances and cars, and its duty in this regard cannot be evaded or its liability limited by a contract, the terms of which the shipper under all the circumstances of any particular case is bound to agree to, such a provision in a bill of lading constitutes a deliberate effort on the part of transportation companies to shift the consequences of their own negligence upon the shipper.

3. CARRIERS. *Carriage of live stock. Choice by shipper.*

A shipper may for a cheaper freight rate, bind himself to accept a less commodious car, if full opportunity is at the time given him to choose from a list of cars of different construction.

4. CARRIAGE OF LIVE STOCK. *Limitation of value.*

For a cheaper rate extended to a shipper of live stock the railroads liability can be limited.

5. CONTRACTS AGAINST LIABILITY FOR NEGLIGENCE.

When a bill of lading provides that the shipper has examined and accepted the car, this does not mean that the shipper assumes all risks, incident to a defective car, liability in this regard cannot be limited either by implication or by express stipulation; neither can the railroad company limit its liability to so called gross negligence, so far as any liability at all is concerned, it makes no difference whether the negligence is gross or simple.

APPEAL from the circuit court of Quitman county.
HON. W. D. CUTRER, Special Judge.
The facts are fully stated in the opinion of the court.

*P. H. Lowrey,* for appellant.

*Mayes, Wells, May & Sanders,* for appellee.

STEVENS, J., delivered the opinion of the court.

Mr. Covington, the appellant, sued appellee railroad company for damages alleged to have been sustained by

him as owner of a carload of mules shipped from Memphis, Tenn., to Marks, Miss. The mules were loaded by Hazel-Darnell Mule Company and shipped by the Memphis Union stockyards, which owned a switch or spur track over which the loaded car was delivered to the Yazoo & Mississippi Valley Railroad Company for transportation. It appears that the railroad company turned over its blanks or bills of lading to one Mr. Berry, cashier and bookkeeper of the Hazel-Darnell Mule Company, with authority to sign contracts of shipment and to give switching orders for the cars. The bill of lading in this case was signed by Berry both for the railroad company and the Memphis Union Stockyards. The mules were loaded six o'clock p. m. Monday, February 10, 1913, and were delivered to the tracks of the railroad company about an hour later. Mr. Covington, the consignee and owner of the mules, was present when the stock was being loaded, and, according to his testimony, made objection to the car that was furnished and in which the mules were being placed. It appears that the car had a kind of a trapdoor at the top, and the door had been removed or was gone, leaving a large hole in the top of the car through which the rain and sleet of the winter weather freely fell. There is a provision in the bill of lading as follows:

"The car or cars in which the animals are loaded have been examined and accepted by the shipper as being in proper condition for the transportation of said stock."

And the further provision that:

"The railroad company shall not be liable . . . for any loss or damage, however caused, not resulting from gross negligence of the railroad company."

The mules remained in the car without feed, water, or rest or without being unloaded until nine o'clock Wednesday morning, February 12th. There is evidence that the distance from Memphis to Marks is sixty-seven miles, and that a freight train could make the run in six hours. There was a pencil notation or memoranda on the contract of shipment as follows: "thirty-six Hr. release." But no

111 Miss.—36

written request for the thirty-six hour release was executed by any one in accordance with the federal statute regulating interstate shipments of live stock. There was evidence for the plaintiff that the weather was cold, and that rain and sleet decended through the open-hole of the car upon the crowded mules, and that the bottom of the car became very wet and sloppy. There is further evidence for the plaintiff that the mules were suffering from colds or distemper, and that as a result of injuries inflicted by the railroad company one of the mules died, and all of them were damaged. The evidence with reference to the damage, if any, to the mules is conflicting. The case was submitted to the jury and resulted in a verdict for the defendant.

Appellant, as plaintiff in the court below, complains, among other things, of the following instruction granted the defendant:

"In this case the court instructs the jury for the defendant that they will not consider any damage or injury to the mules that was occasioned by the condition the car was in, in which the mules were shipped."

It is not altogether clear that the Yazoo & Mississippi Valley Railroad Company furnished the car in question, but there is evidence that the Illinois Central Railroad Company and the Yazoo & Mississippi Valley Railroad Company had some kind of a joint arrangement with the cashier of the Hazel-Darnell Mule Company by which contracts of shipment and switching orders were signed and given, and that the switch track led to the main lines of both railroad companies, and that both railroad companies have joint facilities in Memphis and the same agent.

Regardless of any other question in the case, the granting of the instruction complained of was erroneous and calculated to lead the jury away from the main issue of the case, and was so prejudicial to plaintiff as to constitute reversible error. According to the evidence for the plaintiff these mules were kept in car some forty hours without feed, water, or rest, and all this while in a car which the undisputed evidence shows was defective for the ship-

ment of valuable mules during the inclement winter season. Notwithstanding this, the jury are directed by plain, express language of the court that they may not consider any damages or injury "occasioned by the condition the car was in." There are two objections to this instruction on the facts of this particular case. In the first place, it might have been possible for the railroad company to make prompt shipment of these mules in the defective car without damage. Instead of doing this, according to the theory of complainant, the shipment was unreasonably delayed and the mules necessarily subjected for an unreasonable length of time in weather of the kind then existing in a car manifestly defective. Even if Mr. Covington is bound by the selection of the car and the provisions of the bill of lading referred to, he yet had a right to expect prompt shipment and delivery at Marks at a time when the consignee could himself take his stock from the exposure of the rain and sleet and the incident damp condition of the crowded car. In the second place, the provisions of the bill of lading relied on by the railroad company in this case, in our judgment, constitute an indirect effort on the part of the carrier to contract against its own negligence, and are therefore contrary to public policy and void. It was evidently the holding of the trial court that these provisions of the contract of shipment were binding on the shipper, and that, in fact, is the argument of counsel for appellee in this case. To this we cannot give our assent. The great weight of authority, and especially the more recent deliverances of the courts of the county, hold that a common carrier may not, by special contract, limit or evade its common-law liability for its own negligence. A railroad company in the very nature of its business is under the duty to furnish the shipper a reasonably safe car for the transportation of live stock or any other freight. The carrier owns and presents the cars for loading. The shipper has little, if any, option in selecting the equipment to be used. In the very nature of things he is powerless to register any effective protest. The carrier owes to the shipping public

the duty of providing reasonably safe appliances and cars, and its duty in this regard cannot be evaded or its liability limited by a contract, the terms of which the shipper under all the circumstances of any particular case is bound to agree to. These provisions are written into a printed form of lading in common use by railroad companies and constitute a deliberate effort on the part of transportation companies to shift the conseqquences of their own negligence upon the shipper. Commerce is ever-increasing in a developing country, and carriers are being called upon more and more to furnish adequate facilities for the transportation of live stock. The very shipment here in question is an interstate shipment, and therefore subject to the provisions of the federal statute generally known as the twenty-eight hour law. It appears from the evidence that the humane provisions of the federal statute were in this instance violated. While it may be true that the state courts have nothing to do with the enforcement of this statute, and certainly not with the enforcement of the penalties prescribed by it, yet the fact that the stock in question was kept in the car a continuous period of forty hours in violation of the statute in question is a circumstance showing probable cause for plaintiff's complaint. It is immaterial in this case as to who owns the car or who tendered it to the plaintiff in this case. The Yazoo & Mississippi Valley Railroad Company is the original or initial carrier, and the only carrier whose liability is called into question.

"A carrier undertaking to transport live stock for those who choose to employ it assumes the full obligationn to furnish safe and suitable vehicles, an adequate road, and to exercise due care and foresight to guard against loss or injury from external sources." 4 R. C. L. par. 435.

It may be conceded that a shipper may, for a cheaper freight rate, bind himself to accept a less commodious car if full opportunity is at the time given him to choose from a list of cars of different construction, and it may also be conceded that for a cheaper rate liability as to the value

of the live stock can be limited. In the case at bar, however, there is no effort even by the contract expressly to limit liability on account of the defective car. There is no provision for a cheaper rate on account of the car used, or on account of the shipper assuming any risk incident to defective cars. The bill of lading says that the shipper has examined and accepted the car, and from this it is contended that the shipper assumes all risks incident to the defective car in question. Liability in this regard cannot, however, be limited either by implication or by express stipulation. Neither can the railroad company limit its liability to so-called gross negligence. *Johnson* v. *Railroad Co.,* 69 Miss. 191, 11 So. 104, 30 Am. St. Rep. 534. So far as any liability at all is concerned, it makes no difference whether the negligence is gross or simple.

On the inability of the carrier to limit or evade the consequences of its own negligences the authorities are too numerous to attempt here to enumerate, but we, however, refer to a few supporting the views here expressed. *Adams* v. *Colorado & S. R. Co.,* 49 Colo. 475, 113 Pac. 1010, 36 L. R. A. (N. S.) 412, and note; *John Schroeder Lumber Co.* v. *Chicago & N. W. R. Co.,* 135 Wis. 575, 116 N. W. 179, 128 Am. St. Rep. 1039, and note; 130 Am. St. Rep. 446, and authorities there listed; 4 R. C. L. pars. 156, 452, 453; *Railroad Company* v. *Dies,* 91 Tenn. 177, 18 S. W. 266, 30 Am. St. Rep. 871; *Nevius* v. *Chicago, St. P., M. & O. R. Co.,* 124 Wis. 313, 102 N. W. 489, 109 Am. St. Rep. 935; *Houtz* v. *Union P. R. Co.,* 33 Utah, 175, 93 Pac. 439, 17 L. R. A. (N. S.) 628; *B. & O. Express Co.* v. *Cooper,* 66 Miss. 558, 6 So. 327, 14 Am. St. Rep. 586; *A. & V. R. R. Co.* v. *Sparks* 71 Miss. 757, 16 So. 263; *Kime* v. *Southern R. Co.,* 160 N. C. 457, 76 S. E. 509, 43 L. R. A. (N. S.) 617.

*Reversed and remanded.*