MRS. O. W. BENSON, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, Appellant.

No. 1932. Decided February 6, 1909 (99 Pac. 1072).

1. APPEAL AND ERROR—REVIEW—DISCRETION OF COURT—AMENDMENT OF PLEADINGS. The amendment of pleadings is largely within the discretion of the court, and unless the discretion is abused and prejudice results, the court's ruling will not be disturbed on appeal. (Page 245.)

2. PLEADING—AMENDMENT—CONDITION OF CAUSE. In an action against a carrier to recover for lost goods described in the complaint as "two bundles of carpet and one box of household goods," it is not error to allow an amendment of the complaint after beginning the trial, setting out specifically the various articles, defendant not being taken by surprise or prejudice, and

he having been furnished with a list of the articles prior to the trial, and having asked no continuance because of the amendment.   (Page 245.)

3.  Carriers—Carriage of Goods—Limitation of Liability.  A common carrier, in the absence of statute, may, by express contract, limit his liability for the loss of or damage to property transported, but such limitation must be just and reasonable, and receive the assent of the shipper.   (Page 245.)

4.  Principal and Agent—Implied Authority of Agent—Carriage of Goods.  The drayman employed by a shipper to take goods to a railroad depot and ship them is not authorized to enter into a contract with the carrier limiting the carrier's liability, and the shipper is not bound by the contract, the drayman not being one who was in the habit of taking plaintiff's goods to the depot and arranging for their shipment, and the shipper not being furnished with a copy of the contract, and not knowing of its existence until long after the goods were shipped.   (Page 246.)

5.  Carriers Who are "Common Carriers"—Drayman.  A drayman who is directed by a shipper to take her goods to the depot and ship them is a common carrier.[1]   (Page 247.)

6.  Carriers—Carriage of Goods—Loss of Goods—Admissibility of Evidence.  In an action against a carrier for the loss of goods described in the bill of lading as two "bundles of carpet," it is not error to admit evidence that the bundles contained other articles than carpet, where the appearance of the bundles suggested that they contained something besides carpet and all the articles were subject to the same rate of freight, and the goods were not shipped at a reduced rate.   (Page 249.)

Appeal from District Court, First District.  *Hon. W. W. Maughan,* Judge.

Action by Mrs. O. W. Benson against the Oregon Short Line Railroad Company for damages for goods destroyed in transit.  Judgment for plaintiff, and defendant appeals.

Affirmed.

*P. L. Williams, Geo. H. Smith, John G. Willis,* and *H. B. Thompson* for appellant.

*J. C. Walters* for respondent.

---

[1] Oregon Short Line R. Co. v. Davidson, 33 Utah 370, 94 Pac. 10, 16 L. R. A. (N. S.) 777.

STATEMENT OF FACTS.

On September 5th, 1906, respondent, at Butte, Mont., employed one O. R. Oeschili to pack and deliver at defendant's depot for shipment to Logan, Utah, certain household goods. She assisted Oeschili in the packing of the goods, and knew the particular articles that each parcel or bundle contained. The goods were taken to the depot by Oeschili, and by him delivered to appellant for shipment. The goods were consigned to Mrs. O. W. Benson, plaintiff herein, at Logan, Utah, and were described in the bill of lading as one mantle bed, one iron bed, sewing machine, heater, range, center stand, box of household goods, and two bundles of carpet. At the time the goods were delivered at defendant's depot and consigned for shipment Oeschili signed the following instrument, designated a release:

"Oregon Short Line Railroad Company. General Release. Consignee: Mrs. O. W. Benson. Destination: Logan, Utah. Description: Lot H. H. Goods. Butte Station, 9-5 6 190. Whereas the undersigned has this day delivered to the Oregon Short Line Railroad company the property described, marked, consigned and destined as shown in the margin hereof, of an agreed valuation of $5.00 per cwt., and which said property is to be transported from Butte Station over the lines of said company to Logan, Utah; and whereas, the tariffs and classifications of the said company provide two rates for the transportation of certain kinds of freight the nature of which, or of the package furnished by shippers in which it is contained, renders it liable to damage, and also provide two rates for the transportation of certain kinds of freight, the value of which cannot be reasonably determined from their mere description by name; and whereas, the higher of these rates is charged upon such freight when transported at the risk of the carrier, or in cases in which the value governs the rate, and upon such goods as are not guaranteed by the owner to be no more valuable than the limit of value named in the published tariffs of said company; and the other, which is the lower of the two rates, is charged upon such freight when transported at the risk of the owner, and in cases in which values govern the rate, then only upon so much of said freight as is guaranteed by the owner to be no more valuable than the limit above referred to; and whereas, said freight is shipped by agreement of parties at the lower of said rates; and whereas, for the purpose of obtaining said rates and adjusting in advance all questions which may hereafter arise as to the value of said property, it has been agreed by the parties hereto that

the true value of said property does not exceed the amounts or values as above stated: Now, therefore, in consideration of the premises, the undersigned expressly assumes all risk of loss or damage to said property that may occur during its transportation over the line of said company, and each and every other railway over which the said property must travel in order to reach its point of destination, arising howsoever from any cause, and the acceptance of said reduced rates by the undersigned, expressly releases said company, and each and every carrier over whose line of railway said property may travel, under this agreement, from all liability on account thereof, and from all claims above the limit of value named above for loss or damage occurring to said freight, the rate upon which is dependent upon the value; and the undersigned for the consideration aforesaid hereby agrees to assume and pay all damages arising from any cause above the stipulated value as agreed upon. O. R. Oeschili, Consignor. D. Schabarker, Witness. Original. This release to be issued in triplicate, the original to be retained by the agent, the duplicate to be forwarded to the auditor, Oregon Short Line Railroad Company, Salt Lake City, Utah, and the triplicate securely attached to the original waybill."

The goods were shipped by defendant as consigned, and all of them, except the iron bed, sewing machine, heater, and center stand, were lost or destroyed while in transit. The weight of the goods so lost or destroyed was 950 pounds. Plaintiff brought this action to recover damages for these goods, which, she alleged, were of the value of $628.25. Defendant answered and pleaded the foregoing release as a defense to the action. A trial was had to a jury, which resulted in a verdict for plaintiff in the sum of $415.50. To reverse the judgment rendered on the verdict, defendant has appealed to this court.

McCARTY, J. (after stating the facts as above).

The first assignment of error is predicated upon an order made during the progress of the trial permitting respondent to amend her complaint. Some of the goods over which this controversy arose were described in the complaint as "two bundles of carpet and one box of household goods." Respondent offered evidence tending to show the kind and value of the various articles contained in the box, also to prove that various articles of household goods were wrapped up in the

two bundles of carpet mentioned in the complaint. Appellant objected to the introduction of any testimony respecting any articles that were not specifically mentioned in the complaint on the ground that such testimony was not within the issues, and was therefore irrelevant, immaterial, and incompetent, whereupon respondent asked leave to amend her complaint by setting out and describing each article in detail. Objection was made to the amendment on the ground that appellant was "totally unable to plead to the same or to try the case with respect to it." The objection was overruled, and respondent permitted to amend. The court's ruling in permitting the amendment is assigned as error. The allowing or denying of an amendment to a pleading is a matter that is largely within the discretion of the court, and, unless it appears that this discretion has been abused and the complaining party prejudiced thereby, the court's ruling in allowing or denying an amendment will not be disturbed on appeal. It does not appear that appellant was taken by surprise, or in any manner prejudiced, by the amendment. In fact, the record shows that appellant long prior to the trial was furnished with a list of the articles described in the amendment. Furthermore, no continuance was asked for, which of itself is a strong circumstance indicating that appellant was not prejudiced by the amendment. (1 Ency. Pl. & Pr., 533.) On page 598, same volume, it is said that "amendments to obviate an objection to the introduction of evidence, or to conform the pleadings to the facts proved may be allowed" during the progress of the trial. We are of the opinion that the court did not err in allowing the amendment.

The next question presented by the assignments of error is: Was appellant liable for the market value of the goods as shown by the evidence, or was its liability limited to the value as fixed by the alleged release? It is settled by the great weight of authority that a common carrier, in the absence of statutory regulation to the contrary, may by an express contract which is just and reasonable and

fairly entered into with the shipper limit his common-law liability for the loss of or damage to property consigned to him for transportation. The following are a few of the numerous authorities which illustrate and support this doctrine: 4 Elliott on Railroads, 1500; 1 Hutchinson on Carriers (3d Ed.), 426, and cases cited in note; 6 Cyc. 385; *Hart v. Penna. R. Co.,* 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; *Russell v. Erie R. Co.,* 1 A. & E. Ann. Cases 672, and cases cited in note. But, when a stipulation thus limiting the carrier's liability is inserted in a bill of lading, release, or other document prepared and furnished by the carrier, it must receive the assent of the shipper; otherwise he will not be bound thereby. This principle is well illustrated in the annotations of the case of *Chicago, etc., Ry. Co. v. Calumet, etc., Farm.,* 194 Ill. 9, 61 N. E. 1095, 88 Am. St. Rep. 78, in the following language:

"The rule is well settled that a stipulation restricting the liability of a common carrier in any particular is of no binding force until it receives the assent, express or implied, of the shipper. Such a provision derives no strength merely from its insertion in a bill of lading. Until the consent of the consignor has given to it the effect of a contractual obligation, it can no more affect the rights of the parties to the contract of carriage than can any other *ex parte* action by the carrier."

Appellant insists that respondent having employed Oeschili, a drayman, to pack the goods in question and deliver them at the depot for shipment, she thereby made him her agent, and that notice to Oeschili of the stipulation in the release was notice to her, and all arrangements he may have made or entered into with the appellant for the transportation of the goods, including the stipulation in the release limiting appellant's liability to the nominal sum therein named, were binding upon her. We do not think the record sustains appellant's position. Respondent was not furnished with a copy of the release. In fact, she did not know of its existence until long after the goods were shipped and some of them had reached their destination. Under these circumstances in cannot be said that she assented to any limitation

of appellant's liability as a common-law carrier; and, not having assented to the contract, she was not bound by it. Furthermore, Oeschili, the drayman, was in this case himself a common carrier. (6 Cyc. 369; 2 Words & Phrases, 1317; *O. S. L. R. Co. v. Davidson,* 33 Utah 370, 94 Pac. 10, 16 L. R. A. (N. S.) 777.) Therefore the relation existing between him and respondent at the time the goods were consigned for shipment was that of shipper and carrier rather than that of principal and agent. The only instructions respondent gave Oeschili with reference to shipping the goods were, quoting her own testimony, which is not denied: "I told him to take them to the depot and ship them." These general instructions gave Oeschili no authority to make a special contract limiting appellant's liability as a common carrier. In the case of *Nelson v. Hudson River R. Co.,* 48 N. Y. 498, the question as to whether a contract limiting a carrier's liability, made by a cartman to whom goods were delivered by the shippers with directions for him to take them to defendant's depot and ship them, was binding on the shippers, was before the court. In the course of the opinion it is said:

> "*The cartman was not authorized to make this contract. He was merely the servant of the consignors to deliver this box to the railroad, and was clothed with no discretion to act for them. No authority could be implied from his character and business,* and his principals were near at hand, where they could be consulted, and they could act for themselves. But he assumed to act for them and to do what they were authorized to do. They were notified of all the facts, and the contract made by him for them was delivered to them. They were informed that, if they had any objection to the contract made by their assumed agent, they should notify the defendant the next day. They made no objection, and expressed no dissatisfaction with the contract, leaving the defendant's agent to suppose that it was satisfactory to them. It seems to me that these facts constitute a most emphatic and unequivocal ratification of the contract." (The emphasis is ours.)

In the case of *Seller v. Steamship Pacific,* 1 Ore. 409, Fed. Cas. No. 12644, a question involving this same principle was before the court, and in the course of the opinion it is said:

"The drayman, Beeson, was a mere bailee for hire, to take goods to the wharf and deposit them in the charge of the ship. Such employment of itself gave him no authority to make any contract for the shipper, or to assent to any proposition on the part of the carrier to qualify his liability."

Likewise in the case of *Russell v. Erie R. Co., supra,* after citing with approval the foregoing decisions, the court, speaking through Justice Vroom, says that it is "clearly of opinion that no authority was disclosed which would warrant the making of any contract by the cartman which would limit the liability of the railroad company as common carriers." We do not wish to be understood as holding that a drayman may not, under some circumstances, where express authority is not given him, make a fair and reasonable contract of this kind which will be binding upon the shipper. Where, for example, a shipper has been in the habit of employing a certain drayman to deliver freight at shipping points for transportation, and the drayman, with the knowledge and tacit approval of the shipper, has been accustomed to make all necessary arrangements with the carrier for the transportation of the freight, it might well be said that under such circumstances a just and reasonable contract entered into between the drayman and carrier limiting the latter's liability would be binding upon the shipper.

The contention is also made that respondent was limited in her proof to the goods as described in the bill of lading, and that it was error to admit evidence of the articles wrapped up in the two "bundles of carpet," for the reason that "the railroad company had no notice or knowledge that the plaintiff had packed or intended to ship articles of a different description, quality, class, or designation than those named in the bill of lading," and that it cannot be held to answer for articles of which it had no knowledge. These goods were received and shipped by appellant as one lot. That is, they were all included in one consignment and shipped together as household goods under one rate. This clearly appears from the release or special contract hereinbefore mentioned. No claim is made that any of the goods shipped were improperly listed

as household goods. In fact, the record shows that all articles which respondent was permitted to prove came within that classification. And the evidence shows that one of the bundles listed by appellant in its bill of lading consisted mainly of carpet, rugs made of carpet, and several Axminster rugs. Therefore appellant could not have been deceived nor misled as to the general character of the contents of the bundle. The other bundle consisted of one piece of carpet, nine quilts, seven pairs of blankets, two feather beds, one of which weighed thirty and the other twenty pounds, ten feather pillows, and numerous other articles of dry goods. Now, it is evident that a glance at a bundle of goods made up as this was would have suggested to appellant's shipping agent that it contained something more than a roll of secondhand carpet. Therefore the contention that appellant, because of the manner in which the goods were packed, had no notice of their general character, and was thereby induced to ship them at a reduced rate, is without merit and wholly untenable. And, further, there is no evidence in the record which shows, or tends to show, that the goods were shipped at a reduced rate. True, the release recites in part that "said freight is shipped by agreement of parties at the lower of said rates," but this agreement was not signed by appellant, nor by any of its agents or representatives; and, when Oeschili signed it, the goods had not been shipped nor transportation charges paid. In fact, the charges for transportation were not paid in advance. And, while the release further recited that the railroad company had two rates, yet it does not specify what either of these rates was. Therefore, for aught that appears in the record, respondent may have been charged the higher rate.

The judgment is affirmed. Costs to respondent.

STRAUP, C. J., and FRICK, J., concur.