## LARSEN v. OREGON SHORT LINE RAILROAD COMPANY.

No. 2140. Decided September 2, 1910 (110 Pac. 983).

1. APPEAL AND ERROR—REVIEW—PRESUMPTIONS—FINDINGS. In the absence of objections to findings, they are presumed to have been sustained by the evidence. (Page 134.)

2. APPEAL AND ERROR—REVIEW—PRESUMPTIONS—FINDINGS. In the absence of a request for additional findings, the findings made are presumed to be as broad as the evidence warranted. (Page 134.)

3. APPEAL AND ERROR—RULINGS REVIEWABLE. The Supreme Court cannot on appeal from a judgment for defendant review action in not specially finding on a question of negligence when the pleadings support the judgment on another theory, and where there is no complaint that the findings are not supported by the evidence, or that the court failed to find on a material issue. (Page 134.)

4. CARRIERS—FREIGHT—RIGHT TO LIMIT LIABILITY. A carrier of freight by a fair and reasonable contract can limit his common-law liability as an insurer.[1] (Page 135.)

5. CONTRACTS—FAILURE TO READ—EFFECT. One may be bound by the terms of a contract which he did not read. (Page 135.)

---

[1] Houtz v. Union Pacific Ry. Co., 33 Utah 175, 93 Pac. 439, 17 L. R. A. (N. S.) 628; Benson v. Oregon Short Line R Co., 99 Pac. 1072.

6. CARRIERS—FREIGHT—VALUE. A valuation of five dollars per hundredweight, to which the liability of a carrier of household goods, "consisting of a roll of carpet, including one feather bed, four pillows, and three boxes of other household goods," was limited, was not so inadequate as to be fraudulent on its face, or show valuation below actual value. (Page 137.)

7. CARRIERS—"HOUSEHOLD GOODS." Wearing apparel is not necessarily included within the term "household goods," when the question of good faith or fraud in fixing the value of such goods in a contract for carriage is involved. (Page 137.)

8. CARRIERS—FREIGHT—FEDERAL STATUTE—APPLICABILITY. Act February 4, 1887, c. 104, sec. 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), as amended by Act June 29, 1906, c. 3591, sec. 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1909, p. 1163), making carriers liable for freight lost in interstate shipment, does not prevent a reasonable contract limiting a carrier's liability for injury to freight to a particular valuation per hundredweight in consideration of a reduced freight rate. (Page 137.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Clara Larsen against the Oregon Short Line Railroad Company.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*A. F. Thomas* for appellant.

*P. L. Williams, Geo. H. Smith, Frank K. Nebeker* and *H. B. Thompson* for respondent.

FRICK, J.

Appellant in her complaint in substance alleged: That on the 29th day of May, 1907, she was the owner of certain household goods, "consisting of a roll of carpet, including one feather bed, four pillows, and three boxes of other household goods, which upon said date she delivered into the said defendant's (respondent's) possession as a common carrier, at Blackfoot, Idaho, to be safely carried to Salt Lake City,

Utah." That respondent's charges for freight for transporting said goods, and which appellant paid to it, amounted to two dollars and three cents. "That defendant did not safely carry said goods, but while said goods were in the possession, custody, and control of said defendant . . . said goods became wholly lost to this plaintiff." Appellant alleged the reasonable value of the goods, and prayed for judgment for such value, together with the freight paid as aforesaid. Respondent admitted that it carried on the business of a common carrier in the states of Idaho and Utah, and denied every other allegation in the complaint. As an affirmative defense respondent averred that, at the time and place stated in the complaint, it had received certain goods from appellant which were consigned to her at Salt Lake City, and which goods respondent undertook to transport as a common carrier for hire; that at the time said goods were accepted for shipment "the plaintiff (appellant) agreed with the defendant that, in consideration of a lower rate being applied to said shipment than would otherwise be charged by the said railroad company, the defendant agreed that the value of said property did not exceed five dollars per hundredweight, and thereby assumed all risks necessary to receive such benefit of reduced rates; that said goods were of a gross total weight of two hundred and ninety pounds, which at five dollars per hundredweight, would amount to fourteen dollars and fifty cents, and for which amount this defendant acknowledged itself to be indebted to the plaintiff, and hereby tenders said sum, together with the sum of two dollars and three cents, freight charges heretofore paid by plaintiff to defendant." To this defense appellant filed a reply in which she denied the foregoing averments, but further stated "that on the receipt or bill of lading given to this plaintiff there may have been certain needle eye lettered stipulations somewhat to the effect as it is set out in said answer." It is further alleged in the reply that said alleged agreement was "without consideration, . . . unfair, unreasonable, and unlawful, and fraudulent, and against public policy." The case was tried and submitted to the court without a jury.

The court, in substance, found that at the time and place alleged in the complaint appellant was the owner of certain household goods and wearing apparel of the value of one hundred and seventeen dollars, weighing two hundred and ninety pounds; that said property was at the time and place alleged in the complaint delivered by appellant to respondent to be by it safely carried to Salt Lake City, Utah; that appellant paid respondent as charges for transporting said goods the sum of two dollars and three cents which respondent accepted, and issued to appellant a certain bill of lading, upon the back of which was an agreement or stipulation "which was in plain large type, separated from any other stipulation of the contract or bill of lading and separately signed." The stipulation referred to is as follows: "Release. I hereby certify, that I desire to receive the benefit of any lower rate provided for freight conditional upon carrier being released, or at owner's risk; and in consideration of such lower rate being applied on the within named shipment, I hereby assume all risk necessary to receive such benefit. It is also hereby agreed that the value of the property does not exceed five dollars per hundredweight. May 29, 1908. Clara Larsen, Shipper." The court further found that respondent's agent handed appellant said bill of lading, and that she signed her name thereto without reading or knowing the contents thereof; that at Blackfoot, Idaho, where appellant shipped her goods, respondent kept a book, which was in the possession of said agent, containing the different freight rates or charges for shipments "of the same articles under different liabilities for loss by the defendant, if it should occur, and any person upon request had access to said book; but no discussion occurred there between the plaintiff and defendant's agent relating to different rates;" that the goods shipped by appellant and delivered to respondent as stated were never redelivered to appellant and were wholly lost to her. Upon these findings, the court made conclusions of law as follows: "That said release or agreement in said bill of lading, signed by said plaintiff, wherein the limitation of defendant's liability for loss is placed at five dollars per hundredweight, is

fair, equal, reasonable, and valid, and therefore binding. That said plaintiff is entitled to recover for the goods lost at the rate of five dollars per hundredweight, and two dollars and three cents freight charges, the amount tendered by defendant." Judgment was duly entered in accordance with the conclusions of law. The appeal is upon the judgment roll, without a bill of exceptions.

Counsel for appellant in his assignment of errors complains only of the conclusion of law and the judgment based thereon. He contends that the court erred in enforcing the agreement set forth in the findings of fact wherein the parties agreed upon and fixed the value of the household goods. It is asserted that this contention is supported by what is decided in the case of *Houtz v. U. P. Ry. Co.,* 33 Utah 175, 93 Pac. 439, 17 L. R. A. (N. S.) 628, where in passing upon the question whether a common carrier of property could by contract in advance limit or avoid liability for injury and consequent damages to property transported caused by negligence or misconduct of the carrier or its servants, and where the rule adopted by us is stated in the headnotes as follows: "A carrier cannot by contract exempt itself from, nor limit its liability for, the loss of or damage to property caused by its negligence or misconduct, or that of its servants." The question passed on there is, however, not presented in this case; and in order to avoid, if possible, all confusion respecting the rule based on our conclusions in this case, we have, in substance, set forth all of the material allegations of the complaint, the material averments of the answer and reply, and have likewise given the substance of all of the material findings of fact, and have given the conclusions of law in full. The findings of fact are not assailed; hence we must assume that they are in accordance with the evidence, and, in the absence of any requests upon the part of appellant to have the court make a finding upon the question of negligence, we may infer that the findings were satisfactory to both parties and in fact are as broad as the evidence warranted. At all events we cannot review the action of the court in not specially finding

upon the question of negligence when, as in this case, the pleadings support the judgment upon another theory, and where there is no complaint made that the findings are not supported by the evidence, or that the court failed to find upon a material issue. Taking the pleadings, the findings, and conclusions of law together, it is beyond doubt that the case was tried and determined upon the theory that respondent, as a common carrier, in receiving the goods in question for transportation, became an insurer of their safe delivery at Salt Lake City, and that in case of respondent failing to deliver them safely regardless of all negligence on its part it nevertheless was liable to appellant for the agreed value of the goods. In other words, the court, under the issues, held respondent liable upon its contract as an insurer, and not as a tortfeasor for negligence or misconduct. Upon the other hand, the court held that under the contract the appellant was bound by the value of the goods as stipulated therein.

In view of the foregoing, the doctrine contained in the quotation taken from the headnotes of the Houtz Case, *supra,* has no application. This case, however, falls squarely within another rule which is also referred to in the Houtz Case, namely, that a common carrier of property by a fair and reasonable contract, when fairly entered into may in advance limit his common-law liability as an insurer of the property received for and transported by him. See, also, upon this point *Benson v. O. S. L. R. Co.,* 35 Utah 241, 99 Pac., where, at page 1074, numerous cases upon this point are cited by Mr. Justice McCarty. There was no issue in this case that the contract was obtained by fraud or misrepresentation. The contract was entered into as contracts frequently are by one of the parties omitting or neglecting to read it before signing it. That a party may be bound by the terms of a contract which he did not read is elementary, and in the nature of things must be so. In this case, therefore, there was a special agreement by which the value of the goods to be transported was fixed and which the shipper signed when the goods were received for shipment by the carrier, and in which agreement the shipper also

stipulated that, by reason of the reduced freight charges, the goods should be transported at the shipper's risk. The court construed this contract to mean that in consideration of the reduced freight charges appellant could recover only the value of the goods as fixed in the agreement of shipment. Counsel does not complain that the court misconstrued this contract, but what he complains of is that the court erred in enforcing it. In this connection it is contended that the valuation of five dollars per hundredweight was upon its face fraudulent because household goods are necessarily worth more than that amount per hundredweight. When recourse is had to the description of the goods as contained in the complaint, we think this contention is not well founded. The household goods are described as a "roll of carpet, including one feather bed." A "roll of carpet" is very indefinite both as to quality and value. It may well be that a given roll of carpet may be of great weight but of small value. By simply looking at it it may well be that no one could tell its real value; at least, there is absolutely nothing in this record from which it is made to appear that the respondent's agent knew, or was in possession of information from which he ought to have known, the real value of the "roll of carpet." The feather bed was "included" in the roll of carpet. It does not even appear that the agent knew that there was a feather bed; nor is there anything to show that the agent knew the contents of the three boxes, except that they contained "household goods." Counsel's contention that from these meager facts and circumstances we should hold as a matter of law that respondent's agent knew the real value of the goods, and that the contract limiting their value was entered into without regard to the real value thereof, is clearly untenable. It was an easy matter for counsel to have alleged the facts in this regard, and thus have given the respondent an opportunity to join issue with appellant with respect thereto, and, in such event, to have the court find the facts in accordance with the evidence. Such a course would have been fair to all concerned, and would have presented the question for review.

In addition to all this, the court finds that the shipment included wearing apparel. Nothing is said about wearing apparel in the complaint, and whether the respondent's agent knew that the roll of carpet or a box contained wearing apparel is not made to appear. Nor can it be determined from the findings or otherwise how much of the value found by the court consisted of wearing apparel. We are hardly prepared to hold that wearing apparel is necessarily included within the general term "household goods" when the question of good faith or fraud is involved in fixing the value of such goods.

' Nor can we agree with counsel for appellant that the contract is forbidden, and therefore void by reason of what is contained in Act Feb. 4, 1887, c. 104, sec. 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), as amended by Act June 29, 1906, c. 3591, sec. 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1909, p. 1163), and as found in section 6440 of Pierce's United States Code of 1910. It is clear that the provisions of the section just referred to were not intended to cover contracts like the one in question. The construction and application of that section was squarely presented to and decided by the Supreme Court of New York in the case of *Greenwald v. Weir,* 130 App. Div. 696, 115 N. Y. Supp. 311, decided March 5, 1909. In that case it is held that the section just referred to has no application to contracts like the one in question. In the headnote of that case it is also said:

"Where the written receipt constituting a contract of shipment contains a clause by which the shipper agrees that the value of the property is not more than a stated sum unless a different value is stated, and no greater value is stated, the shipper stipulates and represents, as one of the terms of the contract, that the goods are not of a greater value than the sum stipulated, and is estopped from claiming in case of loss that the value was greater."

We can see no good reason why a shipper should not be bound by a contract if fair and reasonable, and, when fairly entered into, in which he agrees that, in consideration of a reduction of the freight charges, the carrier shall

be released from liability in case of loss except for the value agreed upon. No doubt if such an agreement were entered into for ulterior purposes, or if based upon fraud or misrepresentation of any kind, and such an issue were presented and sustained, no court would enforce such a contract. In the absence of any evidence involving bad faith, and where the contract is neither opposed to public policy nor prohibited by statute, the courts cannot declare it void.

The question whether contracts like the one passed on are enforceable in cases where the property is lost through the negligence or misconduct of the carrier or its agents is not involved, and hence is not passed on.

In view of the whole record, the judgment ought to be, and it accordingly is, affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.