## ADAMS EXPRESS COMPANY *v.* BYERS ET AL.

[No. 21,881.  Filed June 21, 1911.  Rehearing denied January 12, 1912.]

1. CARRIERS.—*Express Shipment.—Limitation of Liability.*—Parties may agree on the value of property to be shipped, and limit the liability of the carrier to the agreed valuation, where the contract is fairly made on a good consideration.  p. 37.

2. CARRIERS.—*Connecting Carrier.—Express Shipment.—Delivery to Carrier.—Limiting Liability.—Authority of Agent.*—As a general rule, authority by the shipper to an agent to deliver an article at the shipping station of the carrier for shipment, carries with it the authority to fix a valuation, and to enter into a contract with the carrier which limits the liability of the latter to the value fixed, and a connecting carrier may avail itself of the limitation.  p. 37.

3. CARRIERS.—*Express Shipment.—Limitation of Liability.*—The common-law liability of a carrier cannot be limited except by contract with the shipper, express or implied, and where the shipper gave no authority to the receiving carrier to place a valuation on the shipment, and did not ratify the act of the receiving carrier in placing a value thereon, and the evidence discloses no course of dealing from which such authority might be presumed, an agreement between such carrier and a connecting carrier fixing a valuation on the shipment will not limit the liability of such connecting carrier to the shipper for loss of or injury to the shipment on its line.  p. 37.

From Boone Circuit Court: *Samuel R. Artman,* Judge.

Action by Carl S. Byers against the Adams Express Company and another.  From a judgment for plaintiff, the defendant Adams Express Company appeals.  (Transferred from Appellate Court under §1405 Burns 1908, Acts 1909 p. 590.)  *Affirmed.*

*Pickens, Moores, Davidson & Pickens,* for appellant.
*Ira M. Sharp,* and *Terhune & Adney,* for appellees.

MORRIS, J.—Appellee Byers sued appellant and appellee American Express Company to recover the value of seven chickens that died while being carried by the express com-

panies from Hazelrigg, Indiana, to the Tri-Centennial Exposition at Jamestown, Virginia, in 1907.

There was a trial by the court, special findings of fact, and conclusions of law thereon, and judgment for Byers for $1,000 against the Adams Express Company, and for the American Express Company against Byers for costs. From this judgment the Adams Express Company appeals.

The uncontroverted facts are that Byers was a breeder and shipper of fancy poultry. His poultry yards were located near Hazelrigg, a station on the Cleveland, Cincinnati, Chicago and St. Louis Railway, in Boone County, and for years he had made numerous shipments by express from the station. Appellee American Express Company is a common carrier of freight by express, and conducts its business, both state and interstate, principally on the system of railway lines commonly known as the New York Central and Big Four. On and prior to October 19, 1907, it had an office and an agent at Hazelrigg.

The Adams Express Company is, and for years has been a common carrier of freight by express, and conducts its business, state and interstate, principally on the lines of railroad owned by the Pennsylvania Company. On and prior to October 19, 1907, the Adams Express Company had the exclusive express privileges at the exposition grounds of the Jamestown exposition, at Norfolk, Virginia. As a part of the attractions at the exposition, there was a poultry exhibit planned to open on October 22. On October 19, 1907, Byers delivered to the American Express Company, at Hazelrigg, a crate of poultry, consisting of nine black Orpington chickens and three ducks. He instructed the express company's agent at Hazelrigg to ship the poultry to Indianapolis, Indiana, and there transfer it to the Adams Express Company, to be by it carried and delivered to the superintendent of the poultry department of the exposition at Norfolk, where Byers intended to exhibit the poultry. The poultry department of the exposition had

prepared special cards to be attached to crates of poultry destined for exhibition at the exposition. Byers filled out one of these cards, by which it was directed that the poultry be shipped by the American Express Company to Indianapolis, and there transferred to the Adams Express Company for shipment to the exposition. On the crate, in bold letters, Byers, before shipment, had written "Very Valuable. Handle With Care." The two express companies had joint rates for shipments from Hazelrigg to Norfolk. The agent of the American Express Company at Hazelrigg, when the crate was tendered for shipment, figured the rate from Hazelrigg, Indiana, to Norfolk, Virginia, and announced to Byers that it was $12.60. Byers thereupon paid the agent that amount. This rate was, in fact, a merchandise rate, and was only intended by the companies to apply to poultry when the value thereof was $5 a head or less. The established rate of the Adams Express Company from Indianapolis to Norfolk, for poultry valued at $1,000, was $103.50, and for poultry valued at $60 was $9.50. The experience of the agent of the American company at Hazelrigg, had been somewhat limited. When Byers delivered the crate of poultry to him, he made no inquiry as to the value of the poultry, although, in the conversation Byers did say to him that this was the most valuable shipment he had ever made. No express agreement, written or verbal, was made in regard to the value of the shipment, or the liabilities of the companies. Byers was not furnished with any bill of lading, nor given any receipt for the poultry. The agent at Hazelrigg prepared and forwarded with the poultry a waybill, on which he designated the value of the poultry at $60, but he did not inform Byers of this fact, nor did Byers ever see the waybill, or have any knowledge that the valuation of $60 had been placed thereon.

The agent of the American company at Hazelrigg made the following entry regarding this shipment, in the out-book of the company:

"1 coop.   From            to            Weight      Ch'g's
12 fowls  C. S. Byers  John A. Murkin, Jr.  180 lbs.  $12.60 Prepaid."
                       Norfolk, Va.

At the time, the agent believed that he was not required, either by law or by the rules of the company, to deliver any receipt or bill of lading to the shipper, nor did he know that it was the rule of the company to present to the shipper a special contract or bill of lading, fixing the value of the property, and limiting the liability of the company when the shipment was to go on ordinary merchandise rates.

At the city of Indianapolis, the transfer agent of the American company made out a transfer receipt and delivered the crate to the Adams company, and at the time presented his transfer receipt, indicating the weight of the crate, the proportion of the express charges to be paid the Adams company, which was $9.50, and also reciting the fact that the poultry was valued at $60; and he stated to the agent of the Adams company, who received the shipment, that the value of the poultry was $5 a head, and that it was in good order; whereupon the agent of the Adams company at Indianapolis took charge of the poultry and signed the transfer receipt.

The Adams company shipped the fowls from Indianapolis to Norfolk, and in the shipment caused seven of the chickens to be suffocated, and they were delivered dead at the exposition grounds. These seven chickens were of the value of $1,000, when received by the Adams company at Indianapolis.

It is contended by appellant, under the above facts, that the American company was the agent of Byers in the delivery of the shipment to appellant, and was bound by the declarations and acts of the American company, in connection with the delivery; that having received the chickens at a valuation of $5 a head, fixed by the American company, appellant is only liable for $35 for the seven dead chickens, and consequently the court erred in overruling the motion

which was made by appellant to modify the judgment against it so as to limit the recovery to the sum of $35. The several errors relied on by appellant present the same proposition.

Parties may agree on the value of property to be shipped, and limit the liability of the carrier to the agreed valuation, where the contract is fairly made on a good consid-

1.  eration. *Adams Express Co.* v. *Carnahan* (1902), 29 Ind. App. 606, 63 N. E. 245, 64 N. E. 647, 94 Am. St. 279, and cases cited.

It may be stated also, as a general proposition, that authority by the shipper to an agent to deliver an article at the shipping station of the carrier for shipment, car-

2.  ries with it the authority to fix a valuation, and to enter into a contract with the carrier which limits the liability of the latter to the value fixed in the contract; and a connecting carrier may avail itself of the limitation. *Adams Express Co.* v. *Carnahan, supra; Hill* v. *Boston, etc., R. Co.* (1887), 144 Mass. 284, 10 N. E. 836.

This rule is recognized because one of the necessary incidents to a shipment is to arrange with the carrier to receive the goods. 31 Cyc. 1402. While an agent may not act beyond the scope of his authority, yet, when the appointment has been expressly made in writing, it frequently happens that much of the agent's resulting authority is implied, because, even where acting under a minutely detailed power of attorney, some item is almost inevitably omitted in drawing the instrument. 31 Cyc. 1335.

The facts in this case, however, do not warrant the conclusion that authority to bind the shipper should be implied, because there was no relationship of principal and

3.  agent between Byers and the American company, but, instead, it was that of shipper and carrier. In the absence of facts showing a habit or course of dealing between the shipper and the initial carrier, whereby the shipper acquiesced in or consented to the initial carrier's fixing the

value of shipments, and limiting the common-law liability of the succeeding carriers, authority will not be implied to warrant the carrier in making an agreement of that character binding on the shipper. *Benson* v. *Oregon, etc., R. Co.* (1909), 35 Utah 241, 99 Pac. 1072, 136 Am. St. 1052; *Nelson* v. *Hudson River R. Co.* (1872), 48 N. Y. 498; *Seller* v. *Steamship Pacific* (1861), 1 Or. 409, Fed. Cas. No. 12,644; *Russell* v. *Erie R. Co.* (1904), 70 N. J. L. 808, 59 Atl. 150, 67 L. R. A. 433, 1 Ann. Cas. 672.

In this case the shipper gave no authority to the American company to place a valuation on the chickens. He never ratified the act of the American company in placing a value thereon. The evidence discloses no course of dealing from which such authority might be presumed. The common-law liability of the carrier cannot be limited except by contract with the shipper, express or implied. No such contract is disclosed by the evidence, and appellant's remedy, if any, is against the American company. There is no error in the record. Judgment affirmed.

NOTE.—Reported in 95 N. E. 513. See, also, under (1) 6 Cyc. 400; 1 Ann. Cas. 676; 19 Ann. Cas. 806; (2) 6 Cyc. 408; (3) 6 Cyc. 404; 2 Am. Rep. 141; 42 Am. Rep. 664.