# BINGHAM v. SAN PEDRO, LOS ANGELES AND SALT LAKE RAILROAD COMPANY.

### No. 2236.  Decided September 9, 1911 (117 Pac. 606).

1. CARRIERS—LIMITING LIABILITY—ASSENT OF SHIPPER.  The stipulation in a contract of carriage of horses limiting the value of each to twenty dollars, such valuation to be the basis of recovery in case of injury, is one as to which there was no meeting of minds, the shipper not having assented thereto, but objected to its insertion by the carrier's agent, and signed the contract only after stating that he would sooner pay a higher rate and have the horses put at their proper value, and after the agent had stated not only that such valuation was only a matter of form, but that he had no other contract which he could give.  (Page 405.)

2. CARRIERS—LIMITING LIABILITY—REASONABLENESS.  The stipulation in a contract of carriage of horses limiting their value to twenty dollars a piece as a basis for liability of the carrier in case of their loss is unreasonable, and so not binding; the carrier's agent having been informed that they were worth $200 a piece.  (Page 406.)

3. CARRIERS—LIMITING LIABILITY—PLACE OF VALUATION.  The stipulation in a contract of carriage of horses that, in case of injury thereto, their value at place of shipment, instead of destination, shall govern, cannot be enforced; it being impossible to segregate it from the invalid stipulation limiting their value to twenty dollars each.  (Page 407.)

APPEAL from District Court, Second District; *Hon. J. A. Howell*, Judge.

Action by Andrew Bingham against the San Pedro, Los Angeles and Salt Lake Railroad Company.

Judgment for plaintiff.  Defendant appeals.

AFFIRMED.

*Pennel Cherrington* and *Dana T. Smith* for appellant.

*Richards & Boyd* for respondent.

FRICK, C. J.

Respondent recovered judgment against appellant for damages he alleged were caused by its negligence as a common carrier in transporting forty-two head of horses from Salt Lake City, Utah, to Los Angeles, Cal.; thirty-one of said horses being killed and the remainder injured while in transit. Appellant in its answer admitted that it had received the horses for shipment to Los Angeles, but denied that it was guilty of negligence, and, as an affirmative defense, alleged that the horses were shipped under a special contract wherein it was agreed by respondent that, in consideration of reduced freight rates, the value of the horses be fixed at twenty dollars per head, and that it was agreed that, in case of loss of or injury to the horses, said valuation should be the basis of recovery. In a separate paragraph of the answer appellant also averred that the value of the horses was limited to $100 per head. Respondent in his reply admitted that appellant's agent had fixed the value of the horses at twenty dollars per head, and that he had inserted that value in the contract of shipment, but, in substance, alleged that said valuation was inserted into the contract by said agent without the assent of respondent and against his express declaration that the horses were worth $200 and upwards per head, and that respondent signed said contract under protest.

At the trial the respondent was permitted to testify, over the objection of appellant's counsel, that he (respondent) objected to shipping the horses at the valuation of twenty dollars per head, and that he informed the agent of appellant at the time that they were worth nearly $200 per head; that the appellant's agent said that the valuation as fixed by him was only a matter of form, and that all the shippers of live stock shipped under such a contract; that respondent then told the agent, "I would sooner pay a higher rate and have the horses valued at their value." To this the agent replied that he had no other contract that he could give respondent, and after this conversation respond-

ent signed the contract. Respondent also testified that the agent of appellant at Salt Lake City was informed of the actual value of the horses; that "he asked the price of a certain team," and said a friend of his wanted to buy a team. The price stated to him was $550 for the team, and the agent telephoned to his friend. The agent looked all of the horses over, and was advised of their quality and condition at and before the time the contract of shipment fixing the valuation was executed. It also appears from the record that the horses were originally received for shipment by the Oregon Short Line Railroad Company. One car load was received at Brigham City and the other at Ogden, Utah, both of which cities are stations on the Oregon Short Line Railroad. It appears, further, that, when the horses were received as aforesaid, a statement was entered into the original contract that they were worth $100 per head. Respondent, however, asserts that he objected to that valuation, and then insisted, as he did afterwards, that the horses were worth $200 per head. We mention the foregoing facts only as an explanation of appellant's statement in his answer that the horses were valued at $100 per head. As this alleged valuation was entirely superseded and ignored by appellant in the contract in question, no further reference to the $100 valuation will be made.

Appellant's counsel frankly concede that the evidence is sufficient to establish culpable negligence on the part of the employees who were in charge of the train on which the horses were transported. They, however, insist that, since the respondent admitted that he entered into and executed a contract of shipment wherein the value of the horses was fixed at twenty dollars per head, therefore he should be bound by said valuation, and that the court erred in permitting him to vary the terms of the contract in that regard, and in permitting a recovery for more than twenty dollars per head for the horses which were killed, and in not limiting the recovery upon that basis for those which were injured. These two propositions really cover all of appellant's assignments.

As we have pointed out, while respondent admitted the execution of the contract in his reply, he nevertheless alleged as an avoidance of the contract that the valuation of the horses was inserted therein by the agent of appellant without respondent's assent and over his protest. These facts he testified to, and therefore established at the trial. In view of the issue arising by the reply, the question of whether the respondent assented to the valuation of the horses or not was a question of fact. (*Chicago & N. W. Ry. Co. v. Calumet Stock Farm*, 194 Ill. 9, 61 N. E. 1095, 88 Am. St. Rep. 68; *Atchison, T. & S. F. Ry. Co. v. Dill*, 48 Kan. 210, 29 Pac. 148.) In the latter case the shipment consisted of horses which were received by the Chicago, Rock Island & Pacific Railroad Company, and were turned over to the Atchison, Topeka & Santa Fe Railway Company while in transit, and the latter company, upon receipt of the horses, insisted upon a new contract of shipment similar to the one in the case at bar and in which the valuation of the horses, without assent of the shipper, was fixed at twenty dollars per head. The Supreme Court of Kansas, however, held that the shipper could show the circumstances under which he entered into the contract, and also held that, in view of the fact that he did not assent to the valuation fixed in the contract in question, he was not bound thereby, but could recover the actual value of the horses. We are clearly of the opinion, therefore, that the trial court committed no error in permitting respondent to show the facts and circumstances under which the value of the horses was fixed and inserted into the contract and under which he signed the same. Counsel, however, strenuously insist that, under the great weight of authority, it was proper for the appellant as a common carrier and respondent as a shipper of live stock to enter into a contract wherein it was agreed that, in consideration of a special or lower freight rate, the value of the horses in case of loss should not exceed a specified sum. In other words, the carrier and shipper may for a sufficient consideration agree to just what risk each will assume with respect to a particular shipment. The leading, or at

least one of the leading, cases upon the subject is the case of *Hart v. Pennsylvania R. Co.,* 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717. Another early and well-considered case which is often. cited is the case of *Alair v. Northern Pac. Ry. Co.,* 53 Minn. 160, 54 N. W. 1072, 19 L. R. A. 764, 39 Am. St. Rep. 588. These cases have been followed by a large number of cases decided by many of the state courts of last resort. It is, however, not necessary for us to refer to a great number of cases upon this question. The reader will find a large number of them collated in 1 Hutchinson on Carriers (3d Ed.), section 426, 427, and in 4 Elliott on Railroads (2d Ed.), section 1500. The United States Supreme Court in the case referred to, and in many later cases decided by that court, has held that such a contract, when fairly and honestly entered into, is good as against a loss occasioned by the ordinary negligence of the carrier. A great many cases decided by the state courts also go to this extent. One of the later ones is the case of *Donlon Bros. v. Southern Pac. Ry. Co.,* 151 Cal. 763, 91 Pac. 603, 11 L. R. A. (N. S.) 811. In that case a large number of cases are cited in support of the doctrine. In California the question is, however, regulated by statute. While this court has not as yet held that a contract based upon a sufficient consideration which is reasonable in its terms and conditions and is freely and fairly entered into by both shipper and carrier, and in which the valuation of the property transported is fixed at a specific amount, will not be enforced although it is lost through the ordinary negligence of the carrier, we have, however, several times held that a contract entered into as aforesaid will be enforced where negligence is not involved, but where the effect of the contract is merely to excuse the carrier from his common law liability as an insurer. (*Houtz v. Union Pac. Ry. Co.,* 33 Utah, 175, 93 Pac. 439, 17 L. R. A. (N. S.) 628; *Benson v. Railroad,* 35 Utah, 241, 99 Pac. 1072, 136 Am. St. Rep. 1052; *Larsen v. O. S. L. R. Co.,* 38 Utah, 130, 110 Pac. 983.) There may, be instances where the regular freight rate might be prohibitive, and where the shippers by contracts which are rea-

sonable in their terms and freely and fairly entered into for a sufficient consideration may be permitted to assume a portion of the risk in transporting their property rather that be prevented from shipping it at all. That question is, however, not involved in this case. Nor is the question involved whether in case of loss or injury contracts limiting the value of live stock or other freight will be enforced by this court in cases where the loss or injury is occasioned through the ordinary negligence of the carrier or his servants. That question can best be determined when a case comes here in which a reasonable contract fixing the value has been freely and fairly entered into, or where the shipper has himself fixed the value as in the case of *Donlon Bros. v. Southern Pac. Ry. Co., supra,* and thus may have estopped himself. upon the foregoing propositions we therefore express no opinion.

In view of the facts in the case at bar, there was in fact no agreement with regard to the value of the horses at all. It is true a specific value was inserted in the contract by appellant's agent, but respondent never assented to the value as fixed by such agent, and hence there never was a meeting of minds upon the question of value between the shipper and the carrier. To bind a shipper under such circumstances would be a reproach to the law. That a contract wherein the carrier is permitted to limit his common law liability in order to be enforceable must be freely, fairly, and honestly entered into, and must be reasonable in its terms and conditions, the authorities are uniform. The only point of difference among them is whether such a contract will be enforced where the loss is due to the ordinary negligence of the carrier or his servants. In view of the evidence in this case, the contract in question was neither freely nor fairly entered into, nor was it reasonable in its terms and conditions. The respondent never assented to the conditions with regard to the value of the horses in case of loss or injury. These conditions were imposed upon him without his consent. In the case of *Cau v. Texas & Pac. Ry. Co.,* 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053,

the rule laid down in *Hart v. Pennsylvania Rd. Co., supra,*
was followed, but in course of the opinion in the Cau Case,
at page 431, 194 U. S., page 664 of 24 Sup. Ct. (48 L. Ed.
1053), it is said: "There can be no limitation of liability
without the assent of the shipper. . . . And there can be
no stipulation for any exemption by a carrier which is not
just and reasonable in the eye of the law." We do not think
a single case can be found where the foregoing doctrine is
not approved and enforced. The contract in question, there-
fore, cannot be enforced as against the respondent because he
never assented to its provisions with respect to the value of
the horses.

Moreover, the value inserted in the contract was wholly un-
reasonable. Under the circumstances, the value as fixed
amounted to no more than an arbitrary statement of value
by appellant's agent inserted in the contract for the sole pur-
pose of limiting appellant's liability as a common carrier.
Courts have so often held that in entering into contract of
shipment the shipper and carrier seldom stand upon
an equal footing that nothing more is necessary than
to mention the fact. The carrier not only prepares the
contract in advance and inserts in it all the stipulations he
desires, but, when the shipper comes to enter into the contract,
he usually is in a situation where he cannot exercise a free
choice with respect to whether he will accept or reject certain
provisions of the contract. No contract limiting liability
when entered into under such circumstances will be enforced
by the courts. (Hutchinson on Carriers (2d Ed.), section
427.) Ordinarily, in order to authorize the enforcement of a
contract limiting the value of freight in case of loss or in-
jury, the value agreed upon must be the reasonable value,
unless the carrier is ignorant of the real value and the value
is fixed by the shipper himself for the purpose of obtaining
a lower rate, and in such event the shipper, in case of loss,
may be estopped from claiming the true value. Again, the
carrier's agent may not know the value of the freight, and in
such event, if acting in good faith, may rely upon the state-
ment of the owner or shipper. If the agent of the carrier

who received the freight, however, knew its value, or knew that the value inserted in the bill of lading was unreasonably low, such a value ordinarily will be held to be one that is arbitrary and unreasonable and will not be binding. In the case at bar the appellant's agent had knowledge of the actual value of the horses before he inserted the same in the contract. He was then informed that twenty dollars per head was only about ten per cent. of the actual value of the horses shipped. He thus, as a reasonable person, must have known that the value as he inserted it into the contract was wholly unreasonable and unfair, and he further knew that it was fixed by him for the sole purpose of arbitrarily limiting appellant's liability in case of loss or injury to the horses while in transit. We repeat that to enforce contracts which are conceived and executed under such circumstances would be a travesty of justice and a reproach to the law.

Nor can the contention prevail that the court erred in permitting a recovery based upon the value of the horses at Los Angeles. The general rule with regard to the measure of damages for freight that is lost or damaged in transit is the value thereof at the place of delivery at the time it should have been delivered. It is true that the shipper and carrier may under ordinary circumstances stipulate that the value of the freight should be determined at some other place. Appellant contends that in the contract in question it was stipulated that in case of loss or injury the value of the horses at Salt Lake should govern. This stipulation was, however, a part or a provision of the contract with regard to the value of the horses, which provision we have already held to be void. It is impossible, even though it were permissible for the purpose of enforcing the contract, to segregate the stipulation referred to from the one fixing the value of the horses at twenty dollars per head, and, as the latter provision has fallen, the former one must fall with it.

The judgment is affirmed, with costs to respondent.

McCARTY and STRAUP, J., concur.