## PARADISE LAND & LIVE STOCK CO v. DAVIS, Agent.

No. 3743. Decided April 28, 1922. Petition for Modification of Order as to Costs Granted May 23, 1922. Remitted May 26, 1922. (207 Pac. 145.)

1. CARRIERS—IN AN ACTION FOR NEGLIGENCE IN TRANSPORTING SHEEP, MOTIONS FOR NONSUIT AND DIRECTED VERDICT PROPERLY OVERRULED. In an action for negligence in transporting sheep motions for a nonsuit and a directed verdict *held* properly overruled.

2. UNITED STATES—FEDERAL STATUTE ON ASSIGNMENTS OF CLAIMS AGAINST UNITED STATES HELD INAPPLICABLE TO CLAIMS AGAINST CARRIER UNDER FEDERAL CONTROL. An assignment of a claim for damages arising out of an injury to sheep while they were being shipped on a railroad under federal control was not within Rev. St. U. S. § 3477 (U. S. Comp. St. § 6383), stating the requisites of a valid assignment of a claim against the United States, since under section 12 of the Federal Control Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾l), such a claim was payable out of the general receipts of the railroad.

3. CARRIERS—SHIPPER, STIPULATING VALUE OF SHEEP IN CONSIDERATION OF LOWER RATE, NOT ENTITLED TO RECOVER MORE. Where a shipper of some sheep, in consideration of a lower rate, placed a stipulated value of $5 each on the sheep, he cannot recover more; the contract being fair and reasonable, and no fraud being practiced by the carrier.

4. CARRIERS—RULE ALLOWING CARRIER TO CONTRACT AGAINST COMMON-LAW LIABILITY FOR LOSS APPLIES TO LOSS CAUSED BY NEGLIGENCE. A common carrier, in the absence of statutory regulations to the contrary, may, by a reasonable contract with shipper, limit its common-law liability for the loss or damage to property consigned to it for transportation, and no different rule applies to a loss caused by the carrier's negligence.[1]

5. CARRIERS—WHETHER ACTION IN TORT OR ON CONTRACT, CARRIER LIABLE ONLY FOR STIPULATED VALUE OF SHEEP. Whether an action is in tort or on a contract, carrier is liable only for the stipulated value of sheep in consideration of a lower rate.

Appeal from District Court, First District, Cache County; *A. A. Law,* Judge.

Action by the Paradise Land &. Live Stock Company against James C. Davis, as Agent of the President, etc. Judgment for plaintiff, and defendant appeals.

REMANDED, with instructions to modify the judgment.

*Geo. H. Smith, J. V. Lyle, R. B. Porter,* and *F. C. Loofbourow,* all of Salt Lake City, and *Roy D. Thatcher,* of Logan, for appellant.

*Stewart, Stewart & Alexander* and *Walton & Walton,* all of Salt Lake City, for respondent.

WEBER, J.

The complaint contains two causes of action, one to recover for the loss of sheep shipped by plaintiff on April 22, 1919, from Wendover, Utah, to Hyrum, Utah, and the other on an assigned claim from Peterson & Sons for damages alleged to have been sustained by them on a shipment of sheep made

---

[1] *Benson* v. *O. S. L. R. R. Co.,* 35 Utah, 241, 99 Pac. 1072, 136 Am. St. Rep. 105, 19 Ann. Cas. 803; *Larsen* v. *O. S. L. R. R. Co.,* 38 Utah, 130, 110 Pac. 983; *Bingham* v. *S. P., L. A. & S. L. R. R. Co.,* 39 Utah, 400, 117 Pac. 606.

at the same time and in the same train. It is alleged in each count of the complaint that on April 21st plaintiff requested defendant to furnish cars and facilities for the transportation of certain sheep, from Wendover, Utah, to Hyrum, Utah; that defendant promised and undertook to furnish proper transportation, feeding, unloading, and general transportation facilities, and undertook to carry said sheep safely, securely, and expeditiously, and to deliver the same at Hyrum in the same condition as when received, excepting only ordinary deterioration, and that plaintiff undertook to pay, and did pay, in consideration for this service, the regular tariff charges therefor. It is further alleged that said sheep were ewes and were heavy with lamb, which fact the defendant well knew, and by reason of that fact it was necessary that transportation should proceed with dispatch, and that said shipment should be carefully handled and promptly delivered at its destination; that defendant failed to carry or transport said sheep safely or expeditiously, but, on the contrary, negligently and carelessly failed and omitted to furnish cars for an unreasonable length of time, to wit, about four hours after the time at which it promised to furnish the same; that defendant negligently and carelessly held said stock in its yards at Salt Lake City for an unreasonable length of time, 4 hours; that it negligently and carelessly delayed said shipment at Wellsville, Utah, for an unreasonable length of time, about 2½ hours; that it negligently and unreasonably delayed said shipment between all of said points, and unnecessarily and negligently operated its trains so as to jolt, jar, bruise, and bump the said sheep in the said trains, and negligently and carelessly failed and omitted to furnish or provide unloading facilities, yards, or corrals, but, on the contrary, the yards and corrals furnished by said defendant at destination were smaller than required for said purposes of unloading, and one of them was practically useless by reason of its having a large mudhole therein. Defendant denied all the allegations of negligence, and affirmatively pleaded the contracts of shipment, and that under said contracts of shipment plaintiff and its assignors, Peterson & Sons, had de-

clared the value of the sheep to be $5 per head, and that plaintiff was precluded from recovering more than $5 per head for the sheep that were lost. The verdict was in favor of plaintiff upon both causes of action. Defendant appeals.

The evidence adduced by respondent is to the effect that when the cars were ordered from the railroad agent the shippers were advised to be prepared to load at daylight, and the shippers told the agent that they would be ready at that time; that the cars were already on the side track, but they were not spotted until 11 a. m. The loading was finished at about 7 p. m. The train left Wendover at 10 p. m. There were about 40 cars of dead freight and 17 cars of sheep. The time made was unusually slow, and there was much jerking of the cars, and more than ordinary jarring and concussion in starting and stopping trains; that by the jerking and jarring the sheep were piled up in the ends or back of the cars. Sometimes when the shippers who accompanied the sheep were standing up in the car they had to brace themselves in order to avoid being knocked over by the jerking. The trip from Wendover to Salt Lake was usually made in 6 hours. This trip took from 10 p. m. to 7:30 the next morning, The sheep arrived at Hyrum at about 7 p. m. April 23d. In the corral at Hyrum there was a mudhole extending the entire length of the corral. The mudhole had been there for months. Between 300 and 400 of the sheep had to be helped or pulled out of the mudhole. When the train arrived at Hyrum, each car contained from 10 to 30 dead sheep an unusual condition in shipping from Wendover to Hyrum; 400 or 500 could not unload themselves at destination. The shipment consisted of ewes in a visibly pregnant but otherwise good condition. The sheep were worth about $20 per head.

On the part of appellant the evidence was to the effect that the train made good time; that no unusual delays occurred, that there was no unusual jerking, and that the train moved along with extraordinary smoothness. Experts were produced by appellant, who testified that blood poisoning was the cause of the death of the sheep, and also the cause of the abortions.

Appellant insists that the court erred in overruling the motions for nonsuit and a directed verdict. It is apparent from what has been heretofore said that there was some evidence of negligence from which the jury could conclude that appellant was blamable for the death of some of the sheep and injury to others. True, all the evidence in behalf of respondent was contradicted, but we cannot say that as a matter of law no substantial evidence was adduced to sustain the material allegations of respondent's complaint. The motion for nonsuit and the motion for a directed verdict were therefore properly denied.

It is contended by appellant's counsel that it was error to admit evidence of the assignment to respondent from Peterson & Sons for damage to their sheep. It is claimed that this suit is one against the United States, and that assignment of their claim by Peterson & Sons was absolutely null and void, for the reason that by section 3477, Rev. St. § 6383, U. S. Comp. Stat. (U. S. Comp. Stat. 1916, p. 7428) it is declared:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. * * *"

We do not think that the statute relied upon by appellant is applicable to the assigned claim in this case. This claim was not against the United States, nor was it payable out of the treasury of the United States. By section 12 of the Federal Control Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾l), receipts from the operation of each carrier are the property of the United States, and, unless otherwise directed by the President, they are to be kept in the custody of the same persons and accounted for in the same way as before federal control. From this fund

disbursements are made, without appropriation, in the manner provided by the accounting regulations of the Interstate Commerce Commission, and judgments for damages are chargeable to the operation of the railroad, and are payable out of the general receipts. The same act preserves for claimants and litigants the rights and remedies they had before government control. Among other things, the statute provides:

"Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government." Section 10 (section 3115¾j).

We think counsel's contention wholly untenable, and that the assignment from Peterson & Sons to plaintiff was properly admitted in evidence.

The pivotal question is whether the contract, in which the agreed value of the sheep is stated at $5 per head, is valid. In that contract it is provided that the value of the sheep did not exceed $5 per head, and the freight rate for the transportation of the sheep was based upon such valuation. The contract between plaintiff and defendant and that between Peterson & Sons and defendant contained the same agreement. The plaintiff testified that he paid about $64 per car for freight. According to the contracts, this rate was based upon the minimum valuation of $5. The contracts further provided that where the valuation declared by shippers exceeded the value of $5 per head for sheep an addition of 2 per cent. would be made to the rate per car for each 50 per cent., or fraction thereof, of additional declared value per head.

In an unbroken line of decisions from *Hart* v. *Pennsylvania R. R.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, to *Boston & Maine R. R.* v. *Piper*, 246 U. S. 439, 38 Sup. Ct. 354, 62 L. Ed. 820, Ann. Cas. 1918E, 469, the Supreme Court of the United States has held that if a common carrier gives to a shipper the choice of two rates the lower of them conditioned upon his agreeing to a stipulated value of his property in

case of loss, even by the carrier's negligence, if the shipper makes such a choice understandingly and freely, and names his valuation, he cannot thereafter recover more than the value which he thus places upon his property. A majority of the state courts are in accord with the doctrine announced by the Supreme Court of the United States:

"As a matter of legal distinction, estoppel is made the basis of this ruling—that, having accepted the benefit of the lower rate, in common honesty the shipper may not repudiate the conditions upon which it was obtained." *U. P. R. R.* v. *Burke*, 255 U. S. 317, 41 Sup. Ct. 283, 65 L. Ed. 656.

It seems only fair that when the shipper declares that the goods he ships have a certain value he should not reap the benefit of the lower freight charge if there is no loss, and in case of loss recover a greater amount than the declared and agreed value. 10 C. J. p. 166, § 212. For a carrier to contract against loss through its negligence is against public policy, but it is not against good business morals nor against public policy to agree upon a valuation which shall limit the liability of the carrier, whether for loss arising from negligence or otherwise, when the contract is fair, open, and reasonable, and no fraud or imposition of any kind has been practiced by the carrier. If the agreed value of the sheep had been $15 per head, as found by the jury, the respondent would have had more freight to pay, and that is what he desired to and did avoid when he agreed to the $5 valuation. Having obtained the benefit of the freight rate on $5 sheep, he should in all fairness and good conscience be precluded from recovering a greater amount now.

Counsel for appellant call our attention to *Benson* v. *O. S. L. R. R. Co.*, 35 Utah, 241, 99 Pac. 1072, 136 Am. St. Rep. 105, 19 Ann. Cas. 803; *Larsen* v. *O. S. L. R. R. Co.*, 38 Utah, 130, 110 Pac. 983, and *Bingham* v. *S. P., L. A. & S. L. R. R. Co.*, 39 Utah, 400, 117 Pac. 606, in which it is held that a common carrier, in the absence of statutory regulation to the contrary, may, by an express contract which is just and reasonable and fairly entered into with the shipper, limit its common-law liability for the loss or damage to property consigned to it for transportation. We agree with

the proposition advanced by counsel that no different rule. should be applied in the event of loss from negligence than in event of loss in some other manner when a valuation has been agreed upon the contract is fair and reasonable.

Counsel further say that in the instant case it is not apparent whether the action is for breach of contract to carry or for negligence in transporting, and they insist that the action is one for breach of contract to carry. While the writer is of the opinion that the case was properly submitted to the jury on the theory of appellant's negligence, it certainly cannot avail appellant if this is an action on the contract to carry. In either case the limitation of liability is $5 per head for the sheep, and to that extent appellant is liable whether the action sounds in tort or whether based on contract.

The jury returned a special verdict in which it was found that 360 head of plaintiff's sheep died as result of appellant's negligence and that 367 of plaintiff's sheep were damaged by slipping their lambs, and that such damage was $4 per head. Of the Peterson sheep the jury found that 140 died as a result of the carrier's negligence, and that 135 slipped their lambs, and that each ewe was thereby damaged to the extent of $4. The judgment, therefore, should be modified as follows: On plaintiff's first cause of action it should recover for 360 head of sheep at $5 per head and 367 at $4 per head; on the second cause of action, for 140 head at $5 per head and 135 at $4 per head, with legal interest on the amount of damages thus computed from April 23, 1919, to the time of the entry of judgment.

The judgment is therefore vacated, and the cause is remanded to the trial court, with instructions to enter judgment in accordance with the views herein expressed. Respondent to recover costs.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.

· Petition for Modification of Order as to Costs.

Appeal from Fourth District

WEBER, J. Appellant has filed a petition for a modification of the order granting respondent costs on appeal.

The order relating to costs is hereby modified, and it is ordered that each party pay one-half of the costs on appeal.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.