BARRY et al. v. LOS ANGELES & S. L. R. CO. et al.

No. 3426.  Decided April 1, 1920.  (189 Pac. 70.)

1. CARRIERS—INJURY TO SHIPMENT MEASURED BY MARKET VALUE AT DESTINATION NOT SUBSEQUENT RETAIL SALE PRICE ELSEWHERE. In an action for damages to fruit during shipment, the measure of damage is the difference between the market value of the fruit in good condition at place of destination

and the market value in damaged condition at such place; the price at which they were subsequently sold in small lots at another place by the one who bought them being immaterial.[1]

2. TRIAL—INSTRUCTIONS NOT ERRONEOUS AS ASSUMING MARKET VALUE AT PLACE OF DESTINATION IN VIEW OF OTHER INSTRUCTION. Where the issue whether there was a market value for fruit at place of destination was otherwise submitted to the jury, an instruction, stating the measure of damages as the difference between the market value in good condition and such value ‧ after damage at the place of‧ destination, and enumerating elements on which such value could be determined, was not erroneous as assuming that the fruit had a market value at the place of destination.

3. TRIAL—INSTRUCTION NEED NOT REPEAT REQUIREMENTS OF FINDING OF DAMAGE. Where an instruction on measure of damages for ‧fruit injured in shipment stated at the beginning as an element the value in the damaged condition if jury found they were damaged, the omission of the latter words in later references to the damaged condition could not have misled the jury, and was not prejudicial error, reading the instructions as a whole.

4. TRIAL—REQUESTED INSTRUCTIONS COVERED BY CHARGE NEED NOT BE GIVEN. It was not error to refuse instructions requested by defendants, even if they were correct and applicable to the facts, where they were substantially covered by the court's charge.

5. APPEAL AND ERROR—ERRONEOUS ADMISSION OF EVIDENCE NOT AFFECTING SUBSTANTIAL RIGHTS IS NOT PREJUDICIAL. Erroneous ruling by the court as to the admission or exclusion of testimony which did not jeopardize the substantial rights of appellants do not require reversal, under Comp. Laws 1917, section 6968.

6. TRIAL—MOTION FOR NONSUIT MUST STATE PARTICULAR GROUNDS. A motion for nonsuit must state the particular grounds, and a motion therefor because plaintiff had failed to prove any negligence of defendants, and had failed to prove any damages, is too general.[2]

7. APPEAL AND ERROR—OBJECTION THAT PLAINTIFF SHOULD PROVE WHICH CARRIER WAS NEGLIGENT MUST BE MADE BELOW. In an

[1] *Bingham* v. *Railroad Co.*, 39 Utah, 407, 117 Pac. 606.
[2] *Lewis* v. *Mining Co.*, 22 Utah, 51, 61 Pac. 860.

action against several connecting carriers for damages to fruit shipment occasioned by negligent failure to keep the drains of refrigerator cars open, in which each defendant' may have participated, where all defendants answered jointly and participated jointly in the trial, they could not, for the first time on appeal urge that a nonsuit should have been directed because plaintiff failed to show which carrier's negligence caused the injury.

8. CARRIERS—CARMACK AMENDMENT DOES NOT PREVENT COMMON-LAW ACTION. The Carmack Amendment (Comp. St. sections 8604a, 8604aa), giving shipper a right of action against the initial carrier which issued the bill of lading, but providing that it should not deprive any holder of receipt or bill of lading of any remedy under existing law, does not deprive shipper of his common-law right to sue all carriers jointly.

Appeal from District Court, Second District, Weber County; *A. W. Agee*, Judge.

Action by C. A. Barry and others against the Los Angeles & Salt Lake Railroad Company and others. Judgment for plaintiffs, and defendants appeal.

AFFIRMED.

*Geo. H. Smith, J. V. Lyle*, and *C. B. Diehl*, all of Salt Lake City, and *C. R. Hollingsworth*, of Ogden, for appellants.

*R. S. Farnsworth*, of Ogden, for respondents.

WEBER, J.

The second amended complaint is, in substance, that plaintiffs are partners; that defendants are railroad corporations and common carriers engaged, among other things, in transporting freight from Provo, Utah, to Salt Lake City over the Los Angeles & Salt Lake Railroad Company's line, thence to Ogden, Utah, by the Oregon Short Line Railroad Company, and from Ogden, through Wyoming, to Denver, Colo., by the Union Pacific Railroad Company; that on September 7, 1916, plaintiffs delivered to the Los Angeles & Salt Lake Rail-

road Company at Provo, Utah, consigned to plaintiffs at Denver, Colo., 945 crates of prunes, valued at $945, which were then and there loaded into a refrigerator car provided by said defendant; that such prunes were in good condition when accepted for shipment; that the defendants negligently permitted the drain pipes from the ice bunkers in said refrigerator car to become clogged and obstructed, thereby causing the water from the melting ice to flow onto and damage the prunes; that the prunes were thereby deteriorated in value and because of their damaged condition the marked for said prunes was lost at the place of destination, and plaintiffs were damaged in the sum of $500; that within ninety days plaintiffs presented their claim for damages to the Union Pacific Railroad Company; and that payment of the claim was refused.

In a joint answer the defendants admitted their corporate existence; that they were common carriers; admitted that the plaintiffs on September 8, 1916, delivered to the Los Angeles & Salt Lake Railroad Company a shipment of prunes, and affirmatively alleged that whatever damage was caused to the prunes was caused by the delays of the plaintiffs, and by the inherent nature or quality or defects of the property itself. Copy of the bill of lading is attached to the answer.

There was evidence tending to support all the allegations of the complaint. While not free from conflict, there was enough to support the judgment for $500 in favor of plaintiffs, and from which defendants appeal. It was shown that the prunes were received in "No. 1 merchantable condition" and were worth at Provo, Utah, eighty-seven and one-half cents per crate. The car was equipped with bunkers filled with ice, the ice being put into the car from the top. There were about five tons of ice. When the prunes were loaded the floor of the car was dry. The shipment reached Denver September 11, 1916, and Mr. Barry of plaintiffs' firm, was notified of the arrival September 13, 1916, at which time he was informed that the car had arrived with water in it. He then turned the car over to Geo. H. Knifton, with instructions to sell the prunes at best market price. The prunes were sold

to a Pueblo, Colo., firm for $617.60. The carload of prunes was shipped to Pueblo, because no offer could be obtained from Denver dealers; there being no market in Denver for prunes damaged as these were. On September 12, 13. and 14 such prunes, in good condition, in carload lots, were worth $1.30 per crate at Denver. A fruit car inspector examined the carload of prunes at Denver on September 13, 1916. He found the car floor covered with water, the prunes wet and damp, and the ice bunkers stopped with cinders, which was the cause of the water being in the car. The car was unsealed or opened in the presence of this witness. When opened two or three sixty-gallon barrels of water ran out of the car; the floor having been covered from one end to the other. The water was up to the crates—four or five inches deep in the car. Evidence was introduced showing the deleterious effect of moisture on prunes, and that these prunes were damaged. The testimony introduced by defendants was in sharp conflict with the statements made by some of the plaintiffs' witnesses.

Many errors are assigned by defendants (hereinafter called appellants), but we shall notice only those deemed material, or which might possibly be conceived to be prejudicial to the rights of appellants.

The court instructed the jury that if they found the prunes were damaged when they arrived at Denver they should return a verdict for plaintiffs, unless they found from a preponderance of all the evidence in the case that such damage was caused by the inherent nature of the prunes, and not by any negligence upon the part of the defendants or any of them. It is insisted that this instruction was ''too narrow'' in its scope, and that the court should also have informed the jury that the appellants would be excused from liability for damage because of the act of God, the public enemy, or process of law. The court was right in not instructing as requested. To instruct about the act of God, or the public enemy, or process of law, would have been to invite the jury to wander in the realms of imagination, and, if possible conjure up a defense within neither the pleadings nor the proof.

Appellants claim that the measure of damages should be based on the Pueblo market value. Evidence was offered by appellants to show what the prunes sold for at Pueblo. In the first place the evidence offered and excluded an alleged record of sales of these prunes by King & Co., the Pueblo commission firm, was incompetent; and it was neither material nor relevant. The prunes had been shipped by the respondents to themselves as consignees at Denver. Respondents' agent sold them at Denver to the Pueblo firm, who shipped them to Pueblo from Denver, and the prunes were resold in small lots, not in carload lots. Respondents were selling and had sold in carload lots, buying them in one place and shipping to themselves in another. The evidence shows the respondents' agent sold them for all he could get at Denver. What King & Co., to whom respondents' agent sold the prunes, obtained for them can be and is of no concern in this case. If appellants' contention be sound, they might with equal force say that what the ultimate consumer paid should be regarded as the criterion, and that if any of those prunes sold at a retail stand at Pueblo at three for a dime the respondents should account for what their vendee's customers received for the prunes, and not what was received for the salvaged car lot at Denver by the respondents. The price taken is the wholesale or carlot price at which respondents sold, not the retail price at which the prunes may have sold. 10 C. J. 396, 397; *Texas & P. Ry. Co. v. Payne,* 15 Tex. Civ. App. 58, 38 S. W. 366; *St. L., S. F. & T. Ry. Co.* v. *Adams,* 55 Tex. Civ. App. 245, 118 S. W. 1155. Denver, not Pueblo, was the destination of the shipment of prunes. It was in Denver where they were found in damaged condition and where respondents' agent sold them. It is the market value at the place of destination which is the criterion of value by which the amount of damages for injury to the goods is to be determined. 10 C. J. 385-396; *Bingham* v. *Railroad Co.,* 39 Utah 407, 117 Pac. 606; *McCaull-Dinsmore Co.* v. *C., M. & St. P. Ry.,* 260 Fed. 835, — C. C. A. —.

The court instructed the jury that if they found for plaintiffs they might return a verdict for a sum equal to the dif-

ference in the market value of the prunes in their damaged condition at Denver, Colo., at the time they arrived there and were ready for delivery to respondents, and their market value at the same time and place if they had not been damaged. In the same instruction the jury were informed that in determining the market value and the depreciation of the market value of the prunes in question, if any, by reason of their being in a damaged condition, if they found they were in a damaged condition, they might consider all of the facts and circumstances proven on the trial concerning their condition when received by the railroad company, and also when they arrived at Denver and were ready for delivery to the plaintiffs or their agent, and also what efforts, if any, were made by plaintiffs and their agent to market and sell the prunes after their arrival at Denver, and the price at which the same were sold. Criticizing the instruction to which we have referred, appellants say:

"The court assumes that there was a market value for prunes in a damaged condition at Denver, Colo., at the time the shipment arrived there, which market value we contend was not established. The court also most emphatically says to the jury in this instruction that the prunes were damaged, which, if it were true, would be a fact for the jury to determine.

The question of market value was submitted to the jury, and was a question for them to determine. The evidence indicates that prunes in a damaged condition in carload lots were absolutely unsalable at Denver, and that respondents' agent made a good sale when he sold the same to the Pueblo firm. It is difficult to conceive how the jury could have been misled by this instruction.

The condition of the prunes upon their arrival at Denver was distinctly left to the jury. That the words "if you find they were in a damaged condition," were not repeated as they might have been would not mislead the jury, and could not in the light of the instructions as a whole, and in view of all the evidence, constitute prejudicial error. When the instructions are taken as a whole, they afford no basis for reasonable criticism.

Eleven instructions were requested by appellants. Those

that were correct and applicable to the facts in the case were substantially covered by the court's charge, which fairly and fully covered all material issues. We have examined the requests and all instructions given, and find no prejudicial error in the refusals to instruct nor in the instructions given.

Nor were there any prejudicial errors in the rulings as to the admission or exclusion of testimony. Even assuming that some of the rulings of the court might be subject to criticism, no substantial rights of the appellants were jeopardized. The duty is imposed upon this court by statute to disregard exceptions, "unless the decision excepted to is material and prejudicial to the substantial rights of the party excepting." Comp. Laws Utah 1917, section 6968.

A plausible argument is made by counsel for appellants, giving reasons why the motion for nonsuit should have been granted. The motion for nonsuit, however, was couched in terms so general that it can be of no avail to appellants if there is any evidence to support the allegations of the complaint. It was in the following language:

"That plaintiffs have failed to prove any negligence on the part of these defendants and upon the further ground that they have failed to prove any damages to the shipment of prunes which is the subject of the complaint."

By repeated decisions of this court it has been held that a motion for nonsuit must specify the grounds upon which it is made:

"A motion * * * 'upon the ground that the evidence fails to show any negligence or carelessness whatever on the part of the defendant company' is too general to be considered." *Lewis* v. *Mining Co.*, 22 Utah, 51, 61 Pac. 860.

As now argued in the appellants' brief, the reasons for nonsuit are based upon the fact that three railroad companies, instead of one, were made defendants, and that the proof of negligence should have more specifically pointed out the guilty defendant, counsel stating their position to be:

"The court erred in overruling defendants' motion for a nonsuit as to the defendants and each of them. The plaintiff in his complaint made the Los Angeles & Salt Lake Railroad Company, a

corporation, the Oregon Short Line Railroad Company, a corporation, and the Union Pacific Railroad Company, a corporation, defendants. Inasmuch as the plaintiff elected to join the initial and its connecting carriers as parties defendant, it was then incumbent upon him to prove any acts of negligence of which any of the carriers may have been guilty, as having been expressly committed by the particular carrier; and, inasmuch if any negligence at all was proven, it was not fixed as to any one of the defendants, it necessarily follows that a nonsuit should have been granted to each and all of the defendants."

Appellants filed a joint answer; made a joint motion for nonsuit, jointly requested instructions, jointly presented their joint defense, joined in their exceptions, joined in their motion for a new trial, joined in their notice of appeal, jointly assigned errors, and remained inseparable alliés until their arrival here, where they jointly present their argument. At no stage of the proceedings prior to their argument here have they intimated that there is a misjoinder of parties, or that the proof failed to point out with exactitude the negligence of each participant, and it is now for the first time that they insist that plaintiffs brought too many defendants into court, and that the proof of negligence was too general, and that therefore none of them are liable. To us it seems too plain for argument that in this case—where the knowledge of who and what caused the drainpipes to be clogged with cinders was locked up in the breasts of the appellants, and where the jury may well have found from the evidence that if either of the carriers (the initial carrier or either of its agents, the connecting carriers) had cleaned out the cinders the car would not have been flooded with water and the injury would have been avoided, where neither carrier introduced any evidence tending to exculpate any of them, where they all admitted participation in the shipment under a through contract and bill of lading routed over their lines under a single freight charge from Provo to Denver, in a car adopted and used by them all, and all the carriers jointly denied negligence when the burden of exoneration was upon each—the jury properly found the full amount against each of them when they failed to show which actually caused the

The Carmack Amendment did not deprive the shipper of any remedy he had under the common law against a connecting or terminal carrier. That amendment expressly provides that nothing therein shall deprive any holder of a receipt or bill of lading of any remedy or right of action he may have under existing law.

In *G., F. & A. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948, the Supreme Court of the United States said:

"There are only two questions presented here, and these are thus set forth in the brief of the plaintiff in error: '(1) That the plaintiff's exclusive remedy was against the initial carrier, the Baltimore & Ohio Southwestern Railroad Company, under the Carmack Amendment of section 20 of the Hepburn Bill [34 St. at L. 593, c. 3591, Comp. Stat. 1913, section 8592]. (2) That, under the stipulation in the bill of lading providing for the filing of claims for loss or damage, the action was barred.' The first contention is met by repeated decisions of this court. The connecting carrier is not relieved from liability by the Carmack Amendment, but the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation, and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid. 'The liability of any carrier in the route over which the articles were routed, for loss or damage, is that imposed by the act as measured by the original contract of shipment, so far as it is valid under the act.' *Kansas City Southern R. Co.* v. *Carl*, 227 U. S. 639, 648, 33 Sup. Ct. 391, 57 L. Ed. 683, 686. See *Adams Express Co.* v. *Croninger*, 226 U. S. 491, 507, 508, 33 Sup. Ct. 148, 57 L. Ed. 314, 320, 321, 44 L. R. A. (N. S.) 257; *Cleveland, C., C. & St. L. R. Co.* v. *Dettlebach*, 239 U. S. 588, 591, 36 Sup. Ct. 177, 60 L. Ed. 453; *Southern R. Co.* v. *Prescott*, 240 U. S. 632, 637, 36 Sup. Ct. 469, 60 L. Ed. 836; *Northern P. Ry. Co.* v. *Wall*, decided April 24, 1916, 241 U. S. 87, 36 Sup. Ct. 493, 60 L. Ed. 905."

In *A., T. & S. F. Ry. Co.* v. *Boyce* (Tex. Civ. App.) 171 S. W. 1094, error was assigned by the railroad company on the part of the trial court in overruling its second special exception to plaintiff's petition to the effect that plaintiffs were attempting to hold it, as initial carrier, for all the damages, and each of the other defendants for the same damages, asking the trial court to require the plaintiff to elect whether they were attempting to hold the defendant as an initial carrier or under

its common-law liability. After quoting from the Interstate Commerce Act, the court said:

"The act was passed for the benefit of the shipper. He can sue the initial carrier alone or any one of the connecting carriers, or all jointly for the damages. *Railway Co.* v. *Carl*, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; *Railway Co.* v. *Ray*, 127 S. W. 281; *Railway Co.* v. *Word*, 159 S. W. 375; *Railway Co.* v. *Ward*, 169 S. W. 1035. We do not understand that an election can be required where a party's rights are analogous, consistent, or concurrent. As we understand, under the Interstate Commerce Act, the contract is made by the initial carrier for all connecting carriers, by the terms of which each and all are bound, and a failure of duty or the negligence of either gives the shipper a right of action against either or all under the act against the initial carrier for all the damages and the connecting carriers for the damages occurring on their respective lines."

Other authorities in line with those heretofore cited are: 10 Std. Ency. Pr. 258; *Yesbik* v. *Central Ga. Ry. Co.*, 19 Ga. App. 252, 91 S. E. 274; *Southern R. Co.* v. *Waxelbaum Produce Co.*, 19 Ga. App. 64, 90 S. E. 987; *Ga. Ry. Co.* v. *Yesbik*, 146 Ga. 769, 92 S. E. 527; *Ill. Cent. R. Co.* v. *Rogers & Hurdles*, 116 Miss. 99, 76 South. 686; *Ga. Cent. R. Co.* v. *Waxelbaum Produce Co.*, 18 Ga. App. 489, 89 S. E. 635; *Gibson & Draughn* v. *Little Rock & H. S. W. Ry.*, 93 Ark. 439, 124 S. W. 1033; *Missouri & T. Ry. et al.* v. *Demere & Coggin* (Tex. Civ. App.) 145 S. W. 623; *Erisman* v. *C. & C. R. Co.* (1917) 180 Iowa 759, 163 N. W. 627.

It cannot avail appellants that respondents assumed an unnecessary burden, both in pleading and proof, and that they sued all who were culpable instead of the initial **8** carrier alone. Plaintiffs had the right to sue one or all. The proof was sufficient to fasten liability upon all. The judgment must stand. It is affirmed, with costs to respondents.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.